[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 445 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 446 
Defendant, having been resentenced following one appeal ((1965)238 Cal.App.2d 466 [47 Cal.Rptr. 879]), *Page 447 
has again appealed from a judgment sentencing him to state prison for possession of a narcotic in violation of section11500 of the Health and Safety Code, with two prior convictions for violation of the provisions of the same section, one in 1951, a misdemeanor, and the other, in 1959, a felony.
In the prior appeal the defendant contended that the judge coerced the jury, and that there was error in the sentencing. There was no challenge to the sufficiency of the evidence to support the conviction. (238 Cal.App.2d at p. 467.) The reviewing court resolved the first issue against the defendant (id., pp. 468-470). On the second issue it found there had been an error in the sentencing because both the prior offenses had been charged as, had been admitted to be, and were referred to by the judge as, felonies, although in fact the earlier, 1951, violation was a misdemeanor. (It was so designated in the abstract of judgment.) Further error was found in treating defendant's application for lesser punishment as a hopeless motion for probation for which he was ineligible (Health Saf. Code, § 11715.6), rather than as a plea for possible commitment for rehabilitation under the provisions then found in Penal Code sections 6399-6555 (now Welf. Inst. Code, §§ 3000-3305). (Id., pp. 470-473.)
The court acknowledged that a misdemeanor "felony offense" (Health Saf. Code, § 11504) had the same consequences on the minimum term to be served as a true felony, but concluded "Where, as here, the penalty for the crime is extremely harsh and the program of rehabilitation strongly supported by public policy, and we are not assured that the sentencing judge was enabled to evaluate properly the possibility of rehabilitation for this appellant, we deem it proper to remand the case for sentencing." It adjudged: "The judgment, insofar as it decrees the sentence as entered, is reversed and the cause is remanded for further proceedings in conformity with this opinion." (Id., p. 473.)
After the remittitur was filed in the trial court, the district attorney advised the defendant and the court that, after investigating the record, he would not assent to a waiver of defendant's ineligibility for the rehabilitation program. (See Welf. Inst. Code, §§ 3051 and 3052; former Pen. Code, §§ 6451 and 6452; and People v. Pineda,supra, 238 Cal.App.2d at p. 472.) Defendant interposed a motion for a new trial on the grounds: "1. That new evidence has been discovered material to the defendant, and which he could not, with reasonable diligence, have discovered and produced at the *Page 448 
trial; 2. That the verdict in the within case was contrary to the law and the evidence; 3. That the court has erred in the decision of a question of law arising during the course of the trial in that evidence of narcotics was admitted after being seized pursuant to an invalid search warrant."
The court refused to grant defendant any relief on the ground that the state of the proceedings was such that it did not have authority to entertain a motion for new trial.[1] The defendant, when then arraigned for sentence, moved the court for permission to withdraw his previous admission of the 1951 offense on the grounds that he had no counsel in those proceedings and had not effectively waived his right to counsel. The court ultimately found that defendant was offered counsel and intelligently and understandingly waived counsel in the 1951 proceedings. Thereafter, following requested delays pending defendant's unsuccessful proceedings to obtain a writ of mandamus (see fn. 1), the judgment now appealed from was entered.
Defendant contends that the trial court erred in refusing to consider his motion for a new trial and that as a result of that error a new trial is required by law. He also asserts that the record, as augmented by the proceedings in connection with the motion for new trial, demonstrates that his conviction is based upon unlawfully obtained evidence procured in the execution of an invalid search warrant. He contends that he is entitled to assert this objection, despite failure to raise it at the trial or on his prior appeal, because it is dependent on restrictive principles applicable to search warrants which were not fully enunciated until his first appeal was determined. Alternatively, he urges that if an objection should have been made, that he was deprived of the effective aid of counsel. Finally he contends that the court erred in finding that he intelligently and understandingly waived his right to counsel in the 1951 proceedings, and in refusing to strike that prior conviction.
For the reasons set forth, it is concluded that the trial court properly refused to entertain defendant's motion for a new trial; that his conviction was not at the time of the second sentencing, nor is it now, open to collateral attack on the *Page 449 
ground of an unforeseeable change in substantive or procedural law; that he was not deprived of the effective aid of counsel; that the trial court properly entertained his objections to his first prior conviction; and that the trial court's finding, on conflicting evidence, of the validity of that conviction should be sustained. The judgment must be affirmed.
The facts in reference to the commission of the offense itself are set forth in People v. Pineda, supra, (238 Cal.App.2d at pp. 467-468), and need not be repeated here. Such facts as bear upon defendant's present contentions are set forth below.
The Motion for New Trial [1] "It is axiomatic . . . that a motion for new trial cannot be entertained or granted after judgment is entered. Penal Code section 1182 provides in part: `The application for a new trial must be made and determined before judgment or the making of an order granting probation, whichever first occurs, . . .' [Citations.]" (People v. Hales (1966) 244 Cal.App.2d 507, 511 [53 Cal.Rptr. 161]; and, in addition to cases cited therein, see People v. Coffman (1951) 105 Cal.App.2d 164, 169 [233 P.2d 117]; and People v. Egan (1933) 135 Cal.App. 561, 562 [27 P.2d 765].)
The prosecution contends that the time within which to make a motion for a new trial expired with the entry of the original judgment. [2] This view is supported by statements that unless the motion is made in the manner and within the time prescribed by statute the right to make it is waived. (See People v.Grake (1964) 227 Cal.App.2d 289, 292 [38 Cal.Rptr. 666];People v. Jaramillo (1962) 208 Cal.App.2d 620, 626 [25 Cal.Rptr. 403]; People v. Fry (1934) 137 Cal.App. 525, 529 [31 P.2d 204].) [3] The right to have the trial judge pass on the weight of the evidence is a valuable right (see People v.Sarazzawski (1945) 27 Cal.2d 7, 15-16 [161 P.2d 934]), but it may be waived by failure to assert it in timely fashion (People
v. Hales, supra, 244 Cal.App.2d 507, 510-511).
On the other hand, the following rule is equally well established. [4] "If the judgment is vacated or set aside, the motion for new trial may then be entertained. [Citations.]" (People v. Hales, supra, 244 Cal.App.2d 507, 511; and see cases cited.) Comparison of the foregoing principles suggests examination of the effect of the decision on the first appeal. The language used in Pineda to remand (238 Cal.App.2d at p. *Page 450 
473) is identical with that found in People v. Ortiz (1964)61 Cal.2d 249 [37 Cal.Rptr. 891, 391 P.2d 163], which thePineda court cited. In Ortiz the court clearly set forth its intention in ordering a limited reversal. The opinion states: "Accordingly, to give proper effect to both the express language and the underlying purpose of the narcotic addict commitment statutes, the cause must be remanded not for a new trial on the issue of guilt but in order that the court may have the opportunity to exercise the discretion vested in it by section 6451. (See People v. Wallace (1963) supra, 59 Cal.2d 548, 553 [3] [30 Cal.Rptr. 449, 381 P.2d 185].)
"The judgment, insofar as it decrees the sentence as entered, is reversed and the cause is remanded for further proceedings in conformity with this opinion." (61 Cal.2d at pp. 255-256.) (See for examples of limited reversals to consider a grant of probation: People v. Wade (1959) 53 Cal.2d 322, 336-339 [1 Cal.Rptr. 683, 348 P.2d 116]; People v. Southack (1952)39 Cal.2d 578, 591-592 [248 P.2d 12]; and People v. Jones (1927)87 Cal.App. 482, 493-500 [262 P. 361]; and for consideration of sexual psychopath proceedings: People v. Barnett (1946)27 Cal.2d 649, 658-659 [166 P.2d 4]; and People v. Raquel (1954)125 Cal.App.2d 384, 386 [270 P.2d 528].)
[5] Viewed in the light of decisions decreeing limited reversals (see cases last cited) it is clear that the question of guilt was finally determined on the prior appeal, and that there was no intent to vacate the judgment to permit further inquiry regarding that issue. (Cf. People v. Moore (1960) 53 Cal.2d 451, 454 [2 Cal.Rptr. 6, 348 P.2d 584].) The matter is controlled by the considerations which evoked the following passage in People v. Oppenheimer (1965) 236 Cal.App.2d 863
[46 Cal.Rptr. 476] (cert. den. (1966) 383 U.S. 930 [15 L.Ed.2d 849, 86 S.Ct. 938] and 383 U.S. 973 [16 L.Ed.2d 313, 86 S.Ct. 1281]) at page 866: "Since our mandate directed only that the order granting probation be vacated, and the original sentence be corrected in the particulars above referred to, it follows that the time for making a motion for a new trial had long since passed, since, under Penal Code section 1182, such a motion must be made prior to judgment. Since the motion for a new trial was not timely made, any errors in connection with its denial are immaterial; the court had no power to receive, or to act upon, the motion. In this state of the record, we have before us only the errors allegedly committed in denying probation, and in failing properly to correct the original sentence." *Page 451 
Defendant contends that a literal reading of the provisions of section 1182 in conjunction with the provisions of section1191,[2] requires that if the time for pronouncement of judgment is extended for any cause, a motion for new trial can be interposed. He equates sentence with judgment (see People v.Perkins (1957) 147 Cal.App.2d 793 [305 P.2d 932]), and concludes that the remand for sentence must of necessity open up the whole judgment, and permit consideration of a subsequently presented motion for new trial. The authority cited states: "The judgment in a criminal action is the sentence. [Citations.] Affirmance of the judgment carries with it affirmance of the sentence." (147 Cal.App.2d at pp. 797-798.) [6] It would be more accurate to state that the judgment in a criminal action is a record of the adjudication of guilt and the determination of the penalty. (See Pen. Code, § 1207; People v. Blackman
(1963) 223 Cal.App.2d 303, 307 [35 Cal.Rptr. 761]; and Witkin, Cal. Criminal Procedure (1963) § 614, p. 605.) [7] The authorities referred to above clearly demonstrate that an appellate court has power and authority to open the penalty aspect of the judgment without affecting the finality of the adjudication of guilt. To permit a new attack on the conviction in the trial court is to grant the trial court the unwarranted power to rehear a decision of the appellate court.
In People v. Prudencio (1928) 93 Cal.App. 241 [269 P. 698] the opinion recites: "[E]very person convicted of crime . . . is afforded the right under the law of this state to make a motion for a new trial based upon the verdict which has been rendered against him, and if presented in the manner and within the time provided by law, and no similar motion has been previously ruled upon, has the right to have such motion heard and determined by the trial judge. Under some circumstances the refusal of the trial court to hear defendant's motion for a new trial or to determine the same within the statutory period entitles the defendant to a new trial (Pen. Code, § 1202; [citations])." (93 Cal.App. at pp. 246-247.) Defendant's attempt to use Prudencio
as a key to enter the tomb in which the trial errors have been interred *Page 452 
must fail. In Prudencio the motion for new trial was made before the original judgment. It was considered undisposed of, and the writ of mandate which set aside the original judgment expressly authorized the trial judge "to hear and determine such motions as may properly come before him. . . ." (93 Cal.App. at pp. 244, 246; and see People v. Moore, supra, 53 Cal.2d 451, 454.)
Prudencio notes, as does defendant: "It appears to be well settled in this state that where a defendant has previously and within the time allowed by law interposed a motion for new trial which is duly heard and denied, he has exercised and exhausted the right afforded him by the law and thereafter the court is without power to entertain another similar motion (People v.Walker, 142 Cal. 90 [75 P. 658]; People v. Ingersoll,21 Cal.App. 763 [132 P. 1052]); . . ." (93 Cal.App. at p. 244; and see in addition to cases cited, People v. Martin (1926)199 Cal. 240, 242 [248 P. 908]; People v. Coronado (1943) 57 Cal.App.2d 805, 813-815 [135 P.2d 647]; and People v. Paysen
(1932) 123 Cal.App. 396, 399-400 [11 P.2d 431].) Defendant seemingly urges that the foregoing establish a converse principle, namely, that if no prior motion has been interposed, a motion for new trial can be made at any stage of the proceedings during which the action is pending in the trial court. For the reasons set forth above this contention is deemed a non sequitur. In fact Martin (199 Cal. at p. 242) and Coronado (57 Cal.App. 2
d at pp. 813-815) recognize that when a second motion has been made after an appeal has been taken from the order denying the first motion, the trial court is without jurisdiction to consider the later request. The power to consider such a motion after resolution of an earlier appeal must depend upon the mandate contained in the decision of the appellate court.
In Thurmond v. Superior Court (1957) 49 Cal.2d 17
[314 P.2d 6] the court ruled: "There is no express provision in the sexual psychopathy law prohibiting a convicted person from moving for a new trial after he has been committed as a sexual psychopath, and the statute does not purport to divest the trial court of all jurisdiction to act with reference to the criminal proceedings." (49 Cal.2d at p. 20.) Defendant argues that by analogy a commitment for narcotics addiction would not preclude making a motion for new trial; that if the trial court had exercised the option reopened by the decision on the first appeal, and had committed him it could properly have entertained his motion, and that therefore it had jurisdiction *Page 453 
to entertain the motion for new trial at any time prior to taking action by sentence or by commitment.
On this point also, the premise does not support the suggested conclusion. In Thurmond the court expressly noted, "Where, as here, the court has not rendered judgment or granted probation, a motion for a new trial is the only remedy available against the conviction until such time as the court may terminate the sexual psychopathy proceedings and render judgment or grant probation." (Id., p. 20.) [8] In the instant case, the defendant had a right to move for a new trial before the pronouncement of the original judgment, he waived it, and then exercised his remedy of appeal against that judgment and the conviction upon which it was, and upon which the present judgment now is, predicated. The affirmance of the issue of guilt on the first appeal precludes subsequent review by the trial court on a motion for new trial.
People v. Risenhoover (1966) 240 Cal.App.2d 233
[49 Cal.Rptr. 526] overturns the rule, which was noted above in passing, "that when a trial court denies a motion for a new trial that ends the matter, and jurisdiction is no longer present in the trial court to upset the prior ruling." (Conley, P.J., dissenting, 240 Cal.App.2d at p. 237.) In that case a jury found the defendant guilty of murder, sane, and recommended the death penalty. The trial court granted the defendant's motion for new trial as to penalty and denied it as to the issues of guilt and sanity. No judgment was ever entered, and no appeal was ever taken by the defendant. Seventeen months later a second motion for new trial on the guilt and the sanity issues was granted by the trial court. In upholding this order, the majority stated: "Appellant cites many cases for the proposition that once a trial court enters an order pursuant to a motion for a new trial, its jurisdiction as to the new trial issue is exhausted. However, no case is cited, and we find none, defining the jurisdiction of trial courts in relation to motions for new trial after the 1961 amendment to Penal Code section 1237, nor a case discussing new trials in relation to a furcated trial. Because of the change in statutory law, we deem the question whether a trial court has jurisdiction to modify or vacate an order denying a new trial and to enter a different order before judgment to be res integra. We think it significant that none of the statutes governing motions for new trial deprives a trial court of jurisdiction over a case until either a judgment is entered or a notice of appeal from an order granting a new trial is filed (except where the *Page 454 
defendant has been committed for sexual psychopathy, insanity, or narcotics addiction, which are not relevant to the issue before us). In short, insofar as concerns statutory law, there is no proscription depriving the trial court of jurisdiction to hear and rule upon a motion for new trial after an order has been made granting or denying a new trial, until either a judgment isentered or a notice of appeal is filed, neither of which occurredhere." (Id., pp. 235-236; italics added.) It is clear thatRisenhoover does not cover the situation of this case, where there has been a conviction, a judgment embodying that conviction, and an appeal in which that conviction was subject to review and was affirmed.
The trial court did not err in refusing to entertain a motion for new trial, as such, under the terms of the remand under the decision on the first appeal.[3]
Post-Conviction Review
The foregoing disposes of the right of defendant to make a conventional motion for new trial on the grounds which have been quoted above.[4] The gravamen of defendant's prayer for relief is found in the statement made in support of his motion in the trial court, "The illegality of the search warrant used in this case was not discoverable until after the trial [September *Page 455 
28 and 29, 1964] due to the subsequent decision in People v.West [237 Cal.App.2d 801 [47 Cal.Rptr. 341], decided Nov. 1, 1965, hearing by the Supreme Court denied December 22, 1965] making such a warrant invalid. . . ." If this premise is sound, and if the error is of sufficient gravity, Risenhoover, supra,
does in fact indicate the necessity of evolving some procedure to be followed in order to apply rapidly evolving principles of criminal law to pending litigation. In Risenhoover it appeared "that defendant's right under Escobedo v. Illinois,378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], People v. Dorado,62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], In re Spencer,63 Cal.2d 400 [46 Cal.Rptr. 753, 406 P.2d 33], and Griffin v.California, 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1129], were violated and reversible error was committed during both the guilt and sanity trials. Furthermore, these cases were decided after defendant's trial, but before final judgment (People v.Ketchel, 63 Cal.2d 859, 863 [48 Cal.Rptr. 614, 409 P.2d 694].) Recent cases (People v. Polk, 63 Cal.2d 443 [47 Cal.Rptr. 1,406 P.2d 641]; People v. Arguello, 63 Cal.2d 566
[47 Cal.Rptr. 485, 407 P.2d 664], and In re Varnum, 63 Cal.2d 629
[47 Cal.Rptr. 769, 408 P.2d 97]) have ordered new trials as to all issues when similar facts were called to the court's attention." (240 Cal.App.2d at p. 235.)
The court concluded, "Since no review of the conviction could be had as to the issues of guilt and sanity until after the penalty retrial, and a reversal of the entire case appears to be inevitable, a retrial of the penalty issue alone would be an idle, wasteful and time-consuming act." (Id., fn. omitted.) So here, defendant urges that it was improper for the trial court to proceed with the sentencing procedure, despite the limited reversal, and that the court should have determined the legality of the search and seizure and granted a new trial because it is inevitable that this court must do so on this appeal.
As previously indicated, defendant is first confronted with the principle that the scope of this appeal is limited to matters arising in connection with this second sentencing. To go beyond the original affirmance of his conviction is to reopen the trial on the merits to collateral attack.
It is generally recognized that habeas corpus is not available to challenge the use of evidence obtained by an unconstitutional search and seizure. (Linkletter v. Walker (1965)381 U.S. 618, 636-640 [14 L.Ed.2d 601, 612-614, 85 S.Ct. 1731]; In *Page 456 re Sterling (1965) 63 Cal.2d 486, 487-490 [47 Cal.Rptr. 205,407 P.2d 5]; In re Shipp (1965) 62 Cal.2d 547, 550 [43 Cal.Rptr. 3, 399 P.2d 571]; In re Lessard (1965) 62 Cal.2d 497, 502-504 [42 Cal.Rptr. 583, 399 P.2d 39]; In re Harris (1961)56 Cal.2d 879, 880-886 [16 Cal.Rptr. 889, 366 P.2d 305], Traynor, J. concurring.) The following language in Harris is pertinent to defendant's contention here: "The law of search and seizure has not been static. . . . If collateral attack was permissible, such changes would invite fresh attacks on final judgments affirmed on appeal under the preexisting rules or on judgments from which appeals were excusably not taken in view of the apparent state of the law. Moreover, if such changes reflected refinements and improvements in constitutional law that went to the correct determination of guilt itself, one would indeed be reluctant to deny their benefits to persons claiming that they had been convicted of crimes they did not commit through the denial of rights now determined to be of constitutional magnitude. Such changes, however, like the exclusionary rule itself have no bearing on the issue of guilt, and it is therefore easily understandable why the lower federal courts have consistently adhered to the rule that the question of unconstitutionally seized evidence may not be raised on collateral attack. [Citations.]" (56 Cal.2d at p. 884.)
In Harris the concurring opinion concluded, "The right to challenge police conduct at the trial and on appeal is sufficient for that purpose." (56 Cal.2d at p. 886.)
Defendant claims that he did not have a realistic opportunity to raise the question of the legality of the search and seizure because the affidavit filed in support of the search warrant was legally sufficient under the law in effect at the time. He claims, and if his premise is correct,[5] he is entitled his then counsel can be held accountable for failing to raise to, the benefit of the following rule: "Neither petitioner nor objections which could only be sustained by reference to cases yet to be determined." (In re Woods (1966) 64 Cal.2d 3, 7-8 [48 Cal.Rptr. 689, 409 P.2d 913]; and see People v. Doherty (1967)67 Cal.2d 1, 13-15 [59 Cal.Rptr. 857, 429 P.2d 177]; *Page 457 People v. Forbs (1965) 62 Cal. 847, 851 [44 Cal.Rptr. 753,402 P.2d 825]; People v. Davis (1965) 62 Cal.2d 791, 796 [44 Cal.Rptr. 454, 402 P.2d 142]; People v. Hillery (1965)62 Cal.2d 692, 711-712 [44 Cal.Rptr. 30, 401 P.2d 382]; andPeople v. Kitchens (1956) 46 Cal.2d 260, 262-263 [294 P.2d 17].)
Having cleared this hurdle, the defendant, on the same premise, seeks to be excused from his failure to raise the objection on his prior appeal.[6] The case was briefed and submitted October 19, 1965. It was decided November 30, 1965 (29 days afterWest), and a hearing in the Supreme Court was applied for and was denied on January 26, 1966. In none of these proceedings, other than as noted (fns. 3 and 5, supra), was any mention made of the possible illegality of the search warrant. He relies on the principle that the "court normally affords collateral relief on constitutional grounds if the petitioner had no opportunity to raise the constitutional issue at trial and on appeal." (In reSpencer (1965) 63 Cal.2d 400, 406 [46 Cal.Rptr. 753,406 P.2d 33]; and see People v. Polk (1965) 63 Cal.2d 443, 448 [47 Cal.Rptr. 1, 406 P.2d 641].)
In Spencer the petitioner applied for a writ of habeas corpus following the affirmance of his conviction of first degree murder with the penalty fixed at death. (People v. Spencer (1963)60 Cal.2d 64 [31 Cal.Rptr. 782, 383 P.2d 134].) He was granted a new penalty trial because of the retroactive application ofPeople v. Morse (1964) 60 Cal.2d 631 [36 Cal.Rptr. 201,388 P.2d 33, 12 A.L.R.3d 810]. (63 Cal.2d at pp. 413-414; see In reJackson (1964) 61 Cal.2d 500 [39 Cal.Rptr. 220, 393 P.2d 420].) The defendant contended that incriminating statements elicited from him in violation of his constitutional rights had been erroneously admitted at his trial in violation of theEscobedo-Dorado rules. ((1964) 378 U.S. 478; (1965) 62 Cal.2d 338. ) In determining whether this question could be reviewed the court ascertained that the prior judgment had become final ((1964) 377 U.S. 1007 [12 L.Ed.2d 1055, 84 S.Ct. 1924]) on the same day the Escobedo decision was rendered; and that under the principle enunciated in Linkletter v. Walker, supra,381 U.S. 618, 622, fn. 5, *Page 458 
and 639-640 [14 L.Ed.2d 601, 604, 614-615] (see also In reLopez (1965) 62 Cal.2d 368, 372 [42 Cal.Rptr. 188,398 P.2d 380]), federal habeas corpus would be available to review the judgment.[7] (63 Cal.2d at pp. 404-405.) It was concluded that petitioner could invoke Escobedo, Massiah and Dorado
collaterally to attack his judgment (Id., at p. 406.) Review, however, revealed that the assailed evidence of his statements was nonprejudicial. (Id., at pp. 407-408.)
In Polk the case was before the court to review a second penalty trial. Guilt had been established on a prior appeal, which resulted in a decision ordering a new penalty trial only. (People v. Polk (1964) 61 Cal.2d 217 [37 Cal.Rptr. 753,390 P.2d 641].) The court found that the time within which to apply for certiorari had not expired prior to the decision inEscobedo (63 Cal.2d at pp. 447-448), and ruled: "The attack on the judgments on the issue of guilt on this appeal from the judgments on the issue of penalty is comparable to a collateral attack, thereby requiring us to follow our practice on collateral attack by granting relief." (Id., at p. 448.) The earlier remittitur was recalled and both judgments were reversed in their entirety because evidence of confessions was received in violation of Escobedo-Dorado rules. (63 Cal.2d at pp. 446-447, 448-449, 451.)
The People assert that even if the Aguilar-West decisions be considered comparable to the Escobedo-Dorado, rules, defendant had ample opportunity after the former decisions to bring the alleged new law in West to the attention of the appellate courts. The remittiturs presumably would not have issued until January 31, 1966. This contention is answered by People v.Treloar (1966) 64 Cal.2d 141 [49 Cal.Rptr. 100, 410 P.2d 620], where the court states: "In In re Spencer, 63 Cal.2d 400
[46 Cal.Rptr. 753, 406 P.2d 33], and People v. Polk, 63 Cal.2d 443
[47 Cal.Rptr. 1, 406 P.2d 641], we held that by virtue ofLinkletter v. Walker, 381 U.S. 618, 622 [14 L.Ed.2d 601, 604, 85 S.Ct. 1731], footnote 5, a defendant may invoke Escobedo to attack a final judgment on the issue of guilt in a subsequent proceeding relating to penalty, if the *Page 459 
judgment on the issue of guilt was not final when Escobedo was decided and if the defendant had no opportunity to raise the constitutional issue at trial and on appeal. The judgment against defendant on the issue of guilt did not become final until 30 days after it was affirmed by this court on July 14, 1964, approximately three weeks after Escobedo was decided. Under the law applicable at the time the appeal was briefed and argued, no question could have been raised on Escobedo grounds. Defendant did not waive his Escobedo claims by failure of counsel to call the attention of this court to the significance of that case by supplemental brief or petition for rehearing in the few weeks between the decision in Escobedo and the time our judgment became final. Under the circumstances, defendant did not have a realistic opportunity to invoke the Escobedo case in his earlier appeal. There was not, therefore, such a deliberate bypassing of orderly state procedures as would justify a denial of collateral relief in the federal courts (see Fay v. Noia,372 U.S. 391, 438, 439 [9 L.Ed.2d 837, 868, 869, 83 S.Ct. 822]), and here, as in the Polk and Spencer cases, our practice on collateral attack compels the granting of relief." (64 Cal.2d at pp. 143-144.)
Defendant, if qualified, could also secure some comfort from the recent case of People v. Doherty, supra, 67 Cal.2d 9, where six judges apparently concurred in the view that the failure of a defendant to object to the introduction of illegally obtained statements at a trial held after Escobedo but prior to January 29, 1965, the date of the court's final Dorado ruling, would not operate as a waiver of such rights. The majority opinion states: "We held in Dorado that the principles established by Escobedo could not logically be limited to statements which had been obtained after the suspect's request for counsel had been denied. A number of state and federal courts, however, had not fully `perceived the implications ofEscobedo.' [Citation.] `Defendants can no more be charged with anticipating [those implications] than can the States' [citation]." (67 Cal.2d at p. 14.)
It is obvious from the foregoing that defendant's right to address this forum concerning the validity of the search warrant, which, when executed, resulted in the disclosure which led to his conviction, is subject to the establishment of several conditions precedent which the record fails to establish.
The facts of this case involve nuances on a general theme of unlawful search and seizure and do not evoke a new composition. *Page 460 
The Aguilar-West relationship can hardly be equated with that of Escobedo and Dorado. It is more akin to theDorado-Miranda relationship. If West merely mirrors Aguilar
then defendant must explain why he did not raise Aguilar at his trial, three months after it was pronounced. If West is an exposition of Aguilar with additional refinements, it should only affect cases brought to trial after its promulgation, because law enforcement authorities sought search warrants relying in good faith on what prior decisions (as interpreted by defendant) declared was reasonable cause. (Cf. People v.Rollins, supra, 65 Cal.2d 681, 685-686, re Miranda.)
An examination of the earlier California decisions fails to reveal that West caused any such revolutionary change, as defendant asserts. West recognizes: "Since the time [June 10, 1963] of Ker v. California, 374 U.S. 23 [10 L.Ed.2d 726, 83 S.Ct. 1623], the reasonableness of a search under state law has been measured by the same constitutional standard as that which governs the reasonableness of a search under federal law, and the decisions of the United States Supreme Court interpreting the Fourth Amendment now apply to California procedure by virtue of the Fourteenth Amendment. (Mapp v. Ohio, 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933].)" (237 Cal.App.2d at p. 804; and see People v. Aguilar (1966) 240 Cal.App.2d 502, 509 [49 Cal.Rptr. 584], fn. 5.) It then proceeds to analyze the decision in Aguilar v. Texas (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509] and concludes: "Aguilar makes clear that a petition for a search warrant based solely on information from a reliable informant must set forth sufficient data in the supporting affidavit (1) to show that the informant is in fact reliable, and (2) to disclose the source of the informant's knowledge so that the examining magistrate can himself determine whether probable cause exists for the issue of the warrant." (Id., at p. 805.) The court found that the affidavit adequately disclosed the basis for the informant's reliability. The allegation in the affidavit which read: "[S]aid confidential, reliable informant told your affiant . . . that [accused] is living at [a particular address], with a girl [named]; that [accused] is still using and selling marijuana and keeps his marijuana in said apartment" (see fn. 1, 237 Cal.App.2d at p. 803) were found inadequate because "the informant's source of knowledge remained a secret." (Id., at p. 806.)
A review of earlier cases in this state on the subject of search warrants reveals a preoccupation with the questions of *Page 461 
the reliability of the informer, and whether his identity should be disclosed. (See People v. Keener (1961) 55 Cal.2d 714, 721-723 [12 Cal.Rptr. 859, 361 P.2d 587] (overruled on other grounds in People v. Butler (1966) 64 Cal.2d 842, 845 [52 Cal.Rptr. 4, 415 P.2d 819]); Dunn v. Municipal Court (1963)220 Cal.App.2d 858, 871-873 [34 Cal.Rptr. 251]; People v.Prieto (1961) 191 Cal.App.2d 62, 67-71 [12 Cal.Rptr. 577] (overruled on other grounds in People v. Butler, supra,64 Cal.2d 842, 845); People v. Perez (1961) 189 Cal.App.2d 526, 532-534 [11 Cal.Rptr. 456] (overruled on other grounds inPeople v. Underwood (1964) 61 Cal.2d 113, 125 [37 Cal.Rptr. 313,389 P.2d 937]); Arata v. Superior Court (1957) 153 Cal.App.2d 767, 770-776 [315 P.2d 473] (overruled on other grounds inPeople v. Butler, supra, 64 Cal.2d 842 845).) Although the description of the affidavits in some of the foregoing cases reveals that they would be inadequate by Aguilar standards, no issue was joined as to whether the affidavit revealed "some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, . . ." (378 U.S. at p. 114 [12 L.Ed.2d at p. 729].)
On the other hand, when attention actually was given to the content of the information as distinguished from its source, the courts pointed out the necessity for more than a conclusion. InDunn v. Municipal Court, supra, a game warden averred, "`I have the sellar of the deer and elk meat sold to [accused] and part of this meat should be at the residence of [accused]; . . .'" The court noted that there was nothing to establish the reliability of the informant, but it also alluded to prior cases with the following conclusions: "A perusal of each of these cases discloses that in each we have something more than mere information, as in the present case, but additional corroborative circumstances, such as observations of the suspicious actions of a defendant; positive statements in the affidavit; past activities; police surveillance or observation; prior conviction for some suspected offense; or prior addiction." (220 Cal.App.2d at pp. 864, 873; italics added.)
An analysis of the prior cases fails to support defendant's theory that they declared a view contrary to West. The most that can be said would be that they had advanced no view, or that the requirements of the nature of the information necessary to show probable cause had not yet crystalized.
In People v. Aguilar, supra, 240 Cal.App.2d 502, the court reviewed an affidavit which alleged the receipt of information *Page 462 
from a reliable confidential informant "that [accused] is presently engaged in the sale of heroin and in possession of said heroin . . . that [accused] obtains this heroin from south of the border and sells it in the East Los Angeles area." The court expressed doubt as to whether the foregoing allegations were sufficient under the test of Aguilar v. Texas, but found that additional recitals of the officer's personal observation were sufficient to show probable cause. (240 Cal.App.2d at pp. 510, 512.)
In the course of reaching this result the court alluded toPeople v. Prewitt (1959) 52 Cal.2d 330 [341 P.2d 1], a nonwarrant arrest case, in which the arresting officers relied upon a report of a reliable informant that "a back office operation was being carried on" at a given address. (52 Cal.2d at p. 334.) In Prewitt the court unqualifiedly stated: "Evidence of information from a reliable informer is sufficient to sustain a finding that an arrest, search, and seizure were made with reasonable cause. [Citations.]" (52 Cal.2d at p. 337.) The court noted that precedent (Willson v. Superior Court (1956)46 Cal.2d 291 [294 P.2d 36]) established that "the identity of, or past experience with, the informer may provide . . . evidence" that reliance on information received from an otherwise anonymous informer was reasonable. (See 46 Cal.2d at p. 295; 52 Cal.2d at pp. 336-337; and 240 Cal.App.2d at pp. 508-509.) Following the foregoing analysis the Court of Appeal stated: "Many other statements could be cited from California cases which lend support to the proposition that, if the magistrate, in his judgment, is sufficiently convinced of the informant's reliability, a warrant may issue even though the informant's conclusion as to illegal conduct is not supported by averment of the reasons which led him to that conclusion." (240 Cal.App.2d at p. 509.) Defendant asserts that this pronouncement evidences that Aguilar v. Texas created a fundamental change in the law.
Examination of Prewitt indicates that the court there was concerned with the question of whether an anonymous but recognizable informer could be a reliable informer. It answered that question in the affirmative, and held that the trial court erred in setting aside an indictment predicated upon evidence obtained through the arrest. (52 Cal.2d at pp. 336-337.) There is no discussion of the nature, quantity or quality of the information furnished. There is nothing in Prewitt, in People
v. Aguilar, or in the prior search warrant cases to indicate that it was established, other than by default *Page 463 
of issue joined, that it was unnecessary to set forth evidentiary facts rather than conclusions received from an informant. InAguilar it was acknowledged that Dunn and Perez had previously in effect recognized the subsequently enunciated principle that "Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police." (United States v. Ventresca (1965) 380 U.S. 102, 108 [13 L.Ed.2d 684, 688, 85 S.Ct. 741], quoted in People v.Aguilar, supra, 240 Cal.App.2d at p. 509 and see fn. 6, same page.)
West was not, in fact, the first California case to recognizeAguilar v. Texas. In January 1965, four months before defendant filed his opening brief on his first appeal, the court in People v. Barthel (1965) 231 Cal.App.2d 827
[42 Cal.Rptr. 290] recognized the dual conjunctive requirements ofAguilar v. Texas and found that the affidavit for the search warrant complied with constitutional standards. (231 Cal.App.2d at pp. 830-832; and see also Galena v. Municipal Court (1965)237 Cal.App.2d 581, 587 [47 Cal.Rptr. 88].)
Subsequent cases, other than People v. Aguilar, which have applied Aguilar v. Texas do not indicate that they were dealing with a revolutionary change in the law. (See People v.Tillman (1965) 238 Cal.App.2d 134, 137-139 [47 Cal.Rptr. 614] ; People v. Gallardo (1966) 244 Cal.App.2d 105, 108-110 [52 Cal.Rptr. 777]; and People v. Castro (1967) 249 Cal.App.2d 168, 171 [57 Cal.Rptr. 108]; and cf. People v. Cruz
(1966) 244 Cal.App.2d 137, 144-146 [53 Cal.Rptr. 354]; People
v. Wells (1966) 245 Cal.App.2d 203, 207-209 [53 Cal.Rptr. 762] ; and People v. Walker (1967) 250 Cal.App.2d 214, 218-220 [58 Cal.Rptr. 495].) In Castro the same court as decided People v. Aguilar stated: "It has long been established by the decisions of the United States Supreme Court that an affidavit containing only the opinions and conclusions of the affiant, without disclosure of the underlying facts, will not constitute `probable cause, supported by Oath or affirmation' within the meaning of the Fourth Amendment," and in support cited not only Aguilar v. Texas but also Nathanson v. UnitedStates (1933) 290 U.S. 41 [78 L.Ed. 159, 54 S.Ct. 11]. (249 Cal.App. 2
d at p. 171.) Aguilar v. Texas itself is predicated uponNathanson (378 U.S. at p. 112 [12 L.Ed.2d at p. 727]), and other earlier cases. (See also Rugendorf v. United States
(1964) 376 U.S. 528, 531-533 [11 L.Ed.2d 887, 890-891, 84 S.Ct. 825]; and Jones v. United *Page 464 States (1960) 362 U.S. 257, 267-271 [4 L.Ed.2d 697, 705-708, 80 S.Ct. 725, 78 A.L.R.2d 233].)
[9] There are no grounds for finding any dramatic change in the law which would necessitate a collateral attack. The matter is governed by the general rule that the question of unconstitutionally seized evidence may not be raised on collateral attack. (Linkletter v. Walker, supra,381 U.S. 618, 636-640 [14 L.Ed.2d 601, 612-614]; In re Sterling, supra,63 Cal.2d 486, 490; In re Shipp, supra, 62 Cal.2d 547, 550; Inre Lessard, supra, 62 Cal.2d 497, 502-504; In re Harris,supra, 56 Cal.2d 879, 880-886, Traynor, J. concurring.)
The language in Harris, set forth above (56 Cal.2d at p. 884), demonstrates that to permit collateral attack for each refinement in the law of search and seizure would place an intolerable burden on the courts.
Furthermore, it should be noted that the failure to make timely objection deprives the prosecution of the opportunity to bring forth facts relating to other information available, and the circumstances attending the search, or any arrest attendant thereto, in order to demonstrate that there was probable cause for the action taken, despite the shortcomings in the affidavit. (See People v. Castro, supra, 249 Cal.App.2d 168, 172-176;People v. Pike (1966) 239 Cal.App.2d 237, 240-241 [48 Cal.Rptr. 575]; and People v. Tillman, supra, 238 Cal.App.2d 134, 139-140.)
It may be assumed that the affidavit in this case[8] is inadequate *Page 465 
under the standards prescribed by Aguilar and West.
Nevertheless defendant has failed to demonstrate that he is in a posture to object to it, or to the evidence which was elicited by its execution, at this stage of the proceedings. No reason suggests itself why Pineda as well as West could not properly object at some stage before his original conviction.[9] The case is controlled by the following statement: [10] "Except in certain circumstances not present here, the admissibility of evidence will not be reviewed on appeal in the absence of a sufficient objection in the trial court (People v. Richardson
(1959) 51 Cal.2d 445, 447 [334 P.2d 573]; People v. Kitchens
(1956) 46 Cal.2d 260, 262 [294 P.2d 17]; see Henry v.Mississippi (1965) 379 U.S. 443 [13 L.Ed.2d 408, 85 S.Ct. 564]; compare In re Shipp (1965) ante, p. 547 [43 Cal.Rptr. 3,399 P.2d 571].)" (People v. Robinson (1965) 62 Cal.2d 889, 894 [44 Cal.Rptr. 762, 402 P.2d 834]; People v. Ibarra (1963)60 Cal.2d 460, 462-463 [34 Cal.Rptr. 863, 386 P.2d 487]; People
v. Lopez (1967) 249 Cal.App.2d 93, 101 [57 Cal.Rptr. 441];People v. Garrison (1966) 246 Cal.App.2d 343, 350 [54 Cal.Rptr. 731]; People v. Sedacca (1965) 238 Cal.App. 190, 193 [47 Cal.Rptr. 657]; People v. Williams (1957) 148 Cal.App.2d 525, 531-533 [307 P.2d 48]; and see, Witkin, Cal. Evidence (2d ed. 1966) § 62, p. 64; and cf. id., § 63, pp. 64-65.)
Ineffective Counsel [11] The constitutional right to counsel contemplates "`effective aid in the preparation and trial of the case.' (Powell v. Alabama [1932] 287 U.S. 45, 71 [77 L.Ed. 158, 171, *Page 466 
53 S.Ct. 55, 84 A.L.R. 527]. . . .)" (People v. Ibarra,supra, 60 Cal.2d 460, 464.) [12] Where such aid is denied the question may be raised by a collateral attack on the conviction. (In re Beaty (1966) 64 Cal.2d 760, 761 [51 Cal.Rptr. 521,414 P.2d 817]; In re Rose (1965) 62 Cal.2d 384, 385 [42 Cal.Rptr. 236,398 P.2d 428]; and see People v. Kirchner (1965)233 Cal.App.2d 83, 87 [43 Cal.Rptr. 218].) It is therefore necessary to examine defendant's contention that the failure of his former trial attorney to question the proceedings leading to the issuance and execution of the search warrant, and his failure to object to the evidence produced as a result of the search, deprived the defendant of the effective assistance of counsel.
The affidavit for the issuance of the search warrant is set forth above (fn. 7, supra). The record of the prior case (1 Crim. 4920, 238 Cal.App.2d 466) reflects that no objection was made to the testimony that the officers entered the defendant's brother's house with a search warrant. Testimony of the observation of the officers within the premises, and, as well, the heroin itself, allegedly dropped on the floor by the defendant, were received in evidence without objection. The defense was predicated on defendant's denial, supported by the testimony of his witnesses, that he ever possessed the envelope containing the heroin.
In the proceedings in the trial court following remand the defendant filed the affidavit of his former attorney. He states: "That prior to the trial of said case and in preparation thereof, affiant went to the office of the County Clerk of the San Jose-Milpitas-Alviso Judicial District and examined a search warrant in the files of said court issued by the Honorable William J. Harris, Judge thereof, dated July 27, 1964 which authorized the search of the person and residence of Charlie Pineda at 141 South Chestnut Street, Gilroy; that affiant looked at said warrant and affidavit in support thereof and based upon affiant's knowledge of the state of the law in California at the time, in September of 1964, affiant's opinion was that the warrant and affidavit were legally sufficient and that no ground existed at that time to challenge the validity of the warrant; That said warrant was relied upon by the prosecution during the trial of Ernest Vivallava Pineda in the Superior Court on September 28, 1964, and that affiant did not challenge its validity solely because affiant believed that the California law on search warrants on the date of the trial afforded no defense as to the warrant. . . ." (Cf. In re Rose, supra, 62 Cal.2d 384, 386, 387-389.) *Page 467 
[13] "To justify relief on the ground of constitutionally inadequate representation of counsel, `"an extreme case must be disclosed" [Citations]. It must appear that counsel's lack of diligence or competence reduced the trial to a "farce or a sham." [Citations.]' (People v. Ibarra (1963) 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487].) [14] Defendant has the burden, moreover, of establishing his allegation of inadequate representation `not as a matter of speculation but as a demonstrable reality.' (Adams v. United States ex rel.McCann (1942) 317 U.S. 269, 281 [87 L.Ed. 268, 275, 63 S.Ct. 236, 143 A.L.R. 435]; accord, People v. Robillard (1960)supra, 55 Cal.2d 88, 97 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086].)" (People v. Reeves (1966) 64 Cal.2d 766, 774 [51 Cal.Rptr. 691, 415 P.2d 35].)
Defendant contends that he has met this burden; that if failure of his attorneys to make proper objection at his trial and prior appeal now bars him from urging the inadequacy of the search warrant, then he uncontrovertibly did not receive the effective assistance of counsel; and that therefore his case falls squarely within the following comments in Ibarra: "Counsel's failure to research the applicable law [presumably Aguilar v. Texas,supra, 378 U.S. 108] precluded the exercise of judgment on his part and deprived defendant of an adjudication of what was clearly the stronger of the two defenses available to him. . . . There would have been no inconsistency in asserting that there was no consent to the entry and no probable cause to arrest and search and also that no heroin was found in defendant's possession. In any event, the record leaves no room for speculation. Counsel's statement to the court makes perfectly clear that his decision reflected, not judgment, but unawareness of a rule of law basic to the case; a rule that reasonable preparation would have revealed. Counsel's failure to object precluded resolution of the crucial factual issues supporting defendant's primary defense. It thereby reduced his trial to a farce and a sham." (60 Cal.2d at pp. 465-466; and see In reGrossi (1967) 248 Cal.App.2d 315, 320 [56 Cal.Rptr. 375]; andPeople v. Natividad (1966) 240 Cal.App.2d 244, 247-248 [49 Cal.Rptr. 437]; cf. People v. Nicolaus (1967) 65 Cal.2d 866, 883 [56 Cal.Rptr. 635, 423 P.2d 787]; People v. Reeves,supra, 64 Cal.2d 766, 772-774; In re Beaty, supra, 64 Cal.2d 760, 764-765; In re Rose, supra, 62 Cal.2d 384, 390-391;People v. Adams (1967) 249 Cal.App.2d 501, 509 [57 Cal.Rptr. 389]; People v. Lopez, supra, 249 Cal.App.2d 93, 99-100; People v. *Page 468 Garrison, supra, 246 Cal.App.2d 343, 350-351, 356-357;People v. Sedacca, supra, 238 Cal.App.2d 190, 193-195;People v. Tillman, supra, 238 Cal.App.2d 134, 140; andPeople v. Kirchner, supra, 233 Cal.App.2d 83, 87-89.)
In re Grossi, supra, offers an uncomplicated formula for the ready resolution of the problem as it is posed by defendant. In that case the issue was whether the defendant could attack his second conviction on the ground of multiple prosecution (Pen. Code, § 654) by writ of habeas corpus. The court said: "It appears to us that if respondent would dispute the availability of the writ, he is in a dilemma: either the failure of the public defender to make a motion which should have resulted in an immediate dismissal of the charge is such a lack of diligence that it is equivalent to a denial of counsel (People v.Ibarra, 60 Cal.2d 460, 464-466 [34 Cal.Rptr. 863,386 P.2d 487]) — in which case the writ is available (In re James,38 Cal.2d 302, 309-310 [240 P.2d 596]) — or Kellet v. SuperiorCourt, 63 Cal.2d 822 [48 Cal.Rptr. 366, 409 P.2d 206], decided much later, so drastically changed the law that the failure to make a record at the trial is excusable under the principle recognized in In re Woods, 64 Cal.2d 3, 7-8 [48 Cal.Rptr. 689,409 P.2d 913]: `Neither petitioner nor his then counsel can be held accountable for failing to raise objections which could only be sustained by reference to cases yet to be determined.'" (248 Cal.App.2d at pp. 320-321; and see People v. Natividad,supra, 240 Cal.App.2d 244, 247-248.)
The question is more intricate. Reflection on the foregoing concept indicates that if it were to be applied indiscriminately, it would lead to abolition of the rule that failure to object precludes review of an error. Ibarra, with its reference toBrubaker v. Dickson (9th Cir. 1962) 310 F.2d 30, pp. 38-39, recognizes that there is a distinction between "decisions of tactics and strategy injurious to appellant's cause" which result from "deliberate though faulty judgment"; and omissions caused by "default of knowledge that reasonable inquiry would have produced, and hence in default of any judgment at all." ( 60 Cal. 2d at p. 465.) In Tillman the court stated: "Our Supreme Court has clearly indicated that if counsel is aware of the law and makes a mistake in judgment, there is no ground for reversal. (People v. Linden, 52 Cal.2d 1 [338 P.2d 397]; In re Rose,62 Cal.2d 384 [42 Cal.Rptr. 236, 398 P.2d 428])." (238 Cal.App. 2
d at pp. 140-141.) The matter is summarized as follows inKirchner: "Competency and effectiveness of counsel has been generally divided by the *Page 469 
courts into two areas. Competence in the sense of strategy, tactics, and judgment exercised by the counsel during his conduct and control of the case (In re Rose, 62 Cal.2d 384
[42 Cal.Rptr. 236, 398 P.2d 428]; People v. Prado, 190 Cal.App.2d 374
[12 Cal.Rptr. 141]; People v. Hood, 141 Cal.App.2d 585
[297 P.2d 52]) or competence or lack of it when the attack is made because of a lack of knowledge of the law (People v.Ibarra, 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487]) or lack of preparation and investigation exhibited by his counsel. (Brubaker v. Dickson, 310 F.2d 30.) In respect of the latter situation, the court held in Ibarra at p. 464: `To justify relief on this ground, "an extreme case must be disclosed." [Citations.] It must appear that counsel's lack of diligence or competence reduced the trial to a "farce or a sham." [Citations.] It is counsel's duty to investigate carefully all defenses of fact and of law that may be available to the defendant, and if his failure to do so results in withdrawing a crucial defense from the case, the defendant has not had the assistance to which he is entitled.'" (233 Cal.App.2d at p. 86.)
The first crucial question in this case is whether the failure to recognize the inherent weakness in the affidavit filed to secure the search warrant indicated a lack of preparation and general incompetence; or, whether defendant's former attorney, in examining the affidavit and warrant, indicated that he was aware of the constitutional prohibitions on searches and seizures (United States Const., Amend. 4; Cal. Const., art. I, § 19) and the general provisions of laws governing the issuance of search warrants (Pen. Code, §§ 1523-1529), and made a mistake in judgment in concluding that the facts alleged were sufficient to comply with the law?
The juxtaposition of a claim that there has been an illegal search and seizure, and a claim that there has been ineffective representation by counsel who failed to make a timely objection, is not novel. (People v. Sedacca, supra, 238 Cal.App.2d 190, 193; People v. Tillman, supra, 238 Cal.App.2d 134, 140;People v. Prado (1961) 190 Cal.App.2d 374, 378 [12 Cal.Rptr. 141]; People v. Amado (1959) 167 Cal.App.2d 345, 347 [334 P.2d 254]; and see People v. Garrison, supra, 246 Cal.App.2d 343, 350 [alleged inadmissible testimony]; and note,People v. Lopez, supra, 249 Cal.App.2d 93, 102 [failure to attack legality of arrest is paradoxically omitted from bill of particulars, pp. 100-102 which attacks quality of representation].)
In Sedacca the court was able to say, "The record does not *Page 470 
show that the arrest warrant was illegally issued or that the evidence in respect of narcotics was not legally obtained." (238 Cal.App.2d at p. 195.) In Tillman the court not only found that the search warrant was valid (238 Cal.App.2d at pp. 137-139), but also found that the facts in the record gave probable cause to arrest the defendant without a warrant (id.,
pp. 139-140). Prado and Amado (each decided before Ibarra) both involved an arrest and attendant search and seizure without any warrant. In each case the court found there was probable cause for the arrest and stated, "Counsel may well have concluded that the defenses of unlawful arrest and illegal search and seizure were not available to defendant. The record indicates they were not." (167 Cal.App.2d at p. 347; and see 190 Cal.App. 2
d at pp. 378-379.)
In this case there is no such record.
In Garrison the court stated: "The failure of counsel to object at the trial does not ordinarily indicate either incompetence of counsel or unfairness to the client. The system of objections is a useful tool in the hands of a trained professional for the exclusion of matter which should not be received into evidence. But the indiscriminate use of objections, solely because they are available, aids neither the client nor the cause of justice. The choice of when to object and when to allow the evidence to come in as offered is inherently a matter of trial tactics. Ordinarily the tactical decisions of trial counsel will not be reviewed with the hindsight of an appellate court. (See, e.g., People v. Brooks, 64 Cal.2d 130, 139-140 [48 Cal.Rptr. 879, 410 P.2d 383]; People v. Reeves,64 Cal.2d 766, 772-773 [51 Cal.Rptr. 691, 415 P.2d 35].) The decisions which counsel must make in the courtroom will necessarily depend in part upon what he then knows about the case, including what his own client has told him. There may beconsiderations not shown by the record, which could never becommunicated to the reviewing court as a basis for its decision.Thus, the appellate court's inability to understand why counseldid as he did cannot be a basis for inferring that he waswrong." (Italics added; 246 Cal.App.2d at pp. 350-351.)
Here, an attempt, has been made to remove the reason for the failure to object from the realm of conjecture. The affidavit recites: "that affiant did not challenge its validity solely
because affiant believed that the California law on search warrants on the date of the trial afforded no defense as to the warrant. . . ." (Italics added.) It must be concluded that defendant did *Page 471 
not get the representation that was afforded defendant West inPeople v. West, where rights were preserved for the application of the principles set forth in Aguilar v. Texas.
(237 Cal.App.2d at pp. 804-807.) [15] Nevertheless, after reading the cases set forth above in regard to the effectiveness of counsel, and those assembled here and in the preceding section of this opinion on searches and seizures, one is led to the conclusion that the question of the legal and factual sufficiency of the allegations set forth in an affidavit for a search warrant is a matter of judgment. An error in such judgment does not evidence such lack of diligence or competence as to reduce the trial to a farce or sham. (Cf. People v. Ibarra, supra,
60 Cal. 2d at pp. 464-466.) This conclusion is reinforced by the observations reported in In re Harris, supra (56 Cal.2d at p. 884) and quoted above. It is said that the refinements and improvements in constitutional law regarding search and seizure need not be retroactively applied through collateral attack, because they are adopted to deter unconstitutional methods of law enforcement and, if violated, do not permit the introduction of evidence which would convict an innocent person. If each defendant is to secure perfection in his representation, then justice would require the impossible task of reopening each case for proper objection, as new weapons of defense are hammered out on the anvil of litigation by those who are imaginative in formulating new concepts and refinements, and diligent in prosecuting them to recognition. [16] There is a distinction between requiring general knowledge of established principles and requiring particular knowledge of each precedent in which those general principles have been applied to a given factual situation. This case falls into the latter category, and error cannot be predicated on counsel's admitted mistake in judgment.
[17] Even if the attorney's admitted error in judgment be considered as evidencing lack of preparation and general competence — which for the reasons set forth above is not apparent — the defendant must also show that the omissions resulted in the withdrawal of a crucial defense from the case. (People v. Ibarra, supra, 60 Cal.2d at p. 464; People v.Kirchner, supra, 233 Cal.App.2d at p. 86.) The ultimate issue is not the validity of the search warrant, but the use of the testimony of what was observed and the use of the physical evidence which was seized after the entry of defendant's brother's house. From the authorities reviewed above, it is clear that the inadequacy of the search warrant will not preclude *Page 472 
use of the evidence where there is other evidence which establishes probable cause for the search. In People v.Castro, supra, the court stated: "Here the officer was guilty of no wrongdoing except faulty draftsmanship. To exclude the marijuana in this case would teach officers that it is folly to seek a warrant when they think they can get by without one. Given a choice between a nonwarrant arrest and a search based upon a magistrate's warrant, officers will be impelled to forego the latter, if a defect in the warrant procedure will invalidate an arrest and search which would have been legal without a warrant." (249 Cal.App.2d at p. 175.)
The record on this appeal fails to reflect what other evidence was available to the prosecution. Nor does the record of the trial as lodged with the prior appeal. In People v. Benjamin
(1957) 154 Cal.App.2d 164 [315 P.2d 896], this court stated, with respect to an objection similar to that which defendant seeks to interpose here, "If he had made timely objection it is quite possible the prosecution could and would have made an ample showing that the officers had reasonable cause for making the arrest without a warrant and the seizure as an incident of the arrest." (154 Cal.App.2d at p. 168.) One can only speculate as to what the officer might testify to concerning the details of the information received from his informant, or what information the raiding party had and observed in addition to that disclosed by the affidavit. These are all matters which might have been elicited if defendant had made prompt objection.
The possibility that "the prosecution may have had additional evidence on this issue that it did not introduce because of defendant's failure to object" was recognized in Ibarra. ( 60 Cal. 2d at p. 463.) There, however, on direct attack, the record revealed evidence which would support findings that there was no consent to the entry and that there was no reasonable cause to arrest and search the defendant. [18] In the instant case, because of the failure to go into the matter, all that appears is that four officers went to the defendant's brother's premises with a search warrant; that two officers entered through the unlocked front doors and announced themselves; and that two officers entered through the kitchen entrance. If the entry were justifiable under any theory the subsequent arrests and seizures were authorized. The defendant's brother was under the influence of heroin (see Health Saf. Code, § 11721) and, according to the officers, defendant attempted to rid himself of the suspicious envelope, *Page 473 
which proved to hold a contraband. Under these circumstances it cannot be determined whether the deficiencies in the affidavit which were overlooked were, or were not, crucial. Defendant has failed to establish a cognizable case of ineffective representation by counsel.[10]
Prior Conviction
On March 24, 1966, the day set for decision on the question of entertaining defendant's attempted motion for a new trial, defendant's counsel interrupted the proceedings to add, as an additional ground for new trial, that defendant had erroneously admitted a prior conviction in 1951, before the jury, which conviction was, in fact, not legal because he had had no counsel in those proceedings.[11]
The court refused to entertain the motion for a new trial, denied probation, and arraigned the defendant for sentencing. The defendant interposed a motion to withdraw his admission of the 1951 conviction, and to strike it from the record, on the grounds he did not have an attorney and did not waive his right to counsel.
Thereafter defendant filed his affidavit in support of the motion in which he set forth that he had no attorney, and related information concerning his age and education, as well as his version of the proceedings.[12] The prosecution filed the *Page 474 
affidavit of the retired judge who conducted the 1951 proceedings in the superior court. His allegations were dependent on what was reflected in the docket and his knowledge of the practice he followed.[13] The court reporter had died and no *Page 475 
one could be found who could decipher his unique system of note-taking.
The court minutes of defendant's arraignment on November 9, 1951 state: "Defendant present announces that he is ready for arraignment and in response to the questions by the Court, defendant states that the name under which he is charged with is his true name, that he has no counsel and does not wish the Court to appoint one, that he waives reading of the Information, whereupon a true and correct copy is presented to him by the Clerk. Defendant states that he desires to plead and in response to the question by the Court as to whether he pleads Guilty or Not Guilty, defendant pleads Guilty. Said plea is received and duly entered. The matter is referred to the Adult Probation Officer for Investigation and report. The Court makes its order fixing Friday November 16, 1951 for hearing on Probation of said defendant. Defendant remanded."
The minutes for November 16, 1951 indicate that the district attorney, the defendant and the probation officer were present. The minutes state: "The matter is presented submitted and considered, whereupon the Court makes its order denying Probation. Defendant is duly informed by the Court of the Information presented against him on the 9th day of November 1951 for the crime of a violation of Division X Section11500 of the Health and Safety Code, and of his arraignment and plea of Guilty as charged in such information, and the order of the Court denying Probation. Defendant is then asked if he has any legal cause to show why judgment should not be pronounced against him, to which he replies that he has none. And no such cause appearing to the Court, it is now Ordered, Adjudged and Decreed, that the said Ernest Pineda for the crime of a violation of Division X Section 11500 of the Health and Safety Code, be confined in the County Jail for a period of 3 months. Said sentence to run concurrently with unexpired term. Defendant remanded."
A copy of the probation report filed with the court on November 16, 1951 indicates that defendant was then 20 years old; that he had attended school in Gilroy through the eighth grade; that he was single, and had been living with his *Page 476 
widowed mother when originally arrested; and that he had been working as a farm laborer for the four preceding years and was unemployed until shortly before his arrest in March 1951. The report reveals that on October 31, 1948 he was arrested by the Salinas Police Department as a drunk and paid a $10 fine; that on May 5, 1950 he was arrested for driving a vehicle while under the influence of intoxicating liquor and was sentenced to pay a fine of $200 or serve 100 days in the county jail; and that on March 22, 1951 he was arrested for issuing two fictitious checks, and was convicted of a reduced charge of two counts of petty theft and sentenced to one year at the county industrial farm.
Defendant's version of his then present offense is set forth as follows: "Defendant states that on the afternoon of September 2, 1951, Jose Quintana, Leo Ganino and John Pineda, his brother, came to the Santa Clara Industrial Farm to visit him. Defendant states that during the visit, Jose Quintana asked the defendant for a cigaret. Defendant handed an open package of cigarets to him and Quintana, instead of removing a cigaret, placed two marijuana cigarets in the package and returned it to the defendant." "Defendant states he did not know that Quintana had placed the marijuana cigarets in the package until he was observed by the guard at the Industrial Farm. Defendant further states that he did not ask Quintana to bring marijuana to him. However, apparently Quintana knew that the defendant was a user of marijuana. Defendant states that this is the first time anyone has brought marijuana to him while he has been confined at the Industrial Farm. Defendant states he has been a user of marijuana for the past year."
The transaction was observed and defendant was charged with possession of marijuana. Quintana was charged with bringing a narcotic into the county farm in violation of section 4573 of the Penal Code. Quintana was convicted in September 1951 and was granted probation on condition that he serve six months in the county jail. The probation officer recommended a jail sentence for defendant to commence at the expiration of the sentence he was then serving.
On the basis of the foregoing evidence the court found that the defendant "intelligently and understandingly waived his right to counsel" and proceeded to include the 1951 misdemeanor conviction for possession in the judgment. Defendant has properly deemed that the trial court by this action denied his motion. He contends that the undisputed facts establish *Page 477 
that he did not intelligently and understandingly waive his right to counsel.
The matter is governed by the following principles which were recently collated in People v. Coffey (1967) 67 Cal.2d 204
[60 Cal.Rptr. 457, 430 P.2d 15]. [19] "The right to the assistance of counsel at trial, the scope of which was enunciated in Gideon v. Wainwright (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733] applies retrospectively without regard to time. (Doughty v. Maxwell (1964) 376 U.S. 202 [11 L.Ed.2d 650, 84 S.Ct. 702]; United States v. LaVallee (2d Cir. 1964) 330 F.2d 303, 310-312; In re Woods (1966) 64 Cal.2d 3, 5-6 [48 Cal.Rptr. 689, 409 P.2d 913].) [20] Further, to the extent that statutory machinery relating to penal status or severity of sanction is activated by the presence of prior convictions, it is imperative that the constitutional basis of such convictions be examined if challenged by proper allegations. (In re Woods, supra, 64 Cal.2d 3; cf. In re Streeter (1967)66 Cal.2d 47 [56 Cal.Rptr. 824, 423 P.2d 976].) The fact that a prior conviction was sustained in another jurisdiction does not preclude such examination. `To the extent that any State makes its penal sanctions depend in part on the fact of prior convictions elsewhere, necessarily it must assume the burden of meeting attacks on the constitutionality of such prior convictions.' (United States v. Jackson (1957) 250 F.2d 349, 355; see In re Woods, supra, 64 Cal.2d 3, 5.)
"Though these principles were first given application in a series of cases involving collateral attacks on final judgments (In re Woods, supra, 64 Cal.2d 3; In re Luce (1966) 64 Cal.2d 11
[48 Cal.Rptr. 694, 409 P.2d 918]; In re Tucker (1966)64 Cal.2d 15 [48 Cal.Rptr. 697, 409 P.2d 921]), it is clearly in the interest of efficient judicial administration that attacks upon the constitutional basis of prior convictions be disposed of at the earliest possible opportunity, and we are therefore of the view that, if the issue is properly raised at or prior to trial, it must be determined by the trial court." (67 Cal.2d at pp. 214-215.)
The People contend that defendant's motion is not timely. It is unnecessary to determine whether defendant's attack is within the scope of the remand, whether it should be rejected as a collateral attack because the prior was admitted after the decision in Gideon v. Wainwright (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733] with knowledge that lack of counsel would invalidate the prior conviction, or *Page 478 
whether collateral attack should only be denied where the prior has been admitted in proceedings after January 26, 1965, the date of the decision in In re Woods. The sustainable decision, adverse to defendant, renders those questions moot in these proceedings.
The matter is governed by People v. Espinoza (1966)241 Cal.App.2d 718 [50 Cal.Rptr. 879]. Therein the court stated: "Whether in prior proceedings the defendant had been represented by counsel or whether he had knowingly waived his right to counsel are issues of fact to be resolved by the trial court upon the evidence before it. (In re Woods, 64 Cal.2d 3, 9-11 [48 Cal.Rptr. 689, 409 P.2d 913].)" (241 Cal.App.2d at p. 720.) The issue raised was framed and resolved as follows: "In his present trial Espinoza testified he had not been represented by counsel at the time he pleaded guilty to a burglary charge in Texas in 1951. The prosecution relied on a certified copy of the judgment which stated that the `cause being called for trial, appeared the parties, the State by her District Attorney, and the defendant in person and by attorney, in open Court, having stated to the Court that he desired to waive a jury and plead guilty before the Court. . . .' (Italics added.) Espinoza further testified that in 1955 he had waived his right to counsel and pleaded guilty in a Texas federal court to a Dyer Act violation (18 U.S.C.A. § 2312), but that his waiver had been based on the statement of the interpreter, who told him he would not need counsel to plead guilty. Again the prosecution relied on the court judgment, which stated "the defendant, Jorge Torres Espinoza, appeared in person and was advised of his right to have counsel, waived counsel. . . .'
"In both instances, conflicting evidence created factual issues to be resolved by the trial court, in the first case whether Espinoza was represented by counsel, and in the second whether he knowingly waived his right to counsel. The trial court's finding of two valid prior convictions necessarily included a finding adverse to Espinoza's contentions, and since this finding was based on substantial evidence we must uphold it on appeal. (People v. Carrillo, 64 Cal.2d 387, 390-391 [50 Cal.Rptr. 185,412 P.2d 377].)" (Id., pp. 720-721.)
[21a] Defendant insists that the test prescribed in Carnley
v. Cochran (1962) 369 U.S. 506 [8 L.Ed.2d 70, 82 S.Ct. 884] has not been met. The opinion in that case states: "Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, *Page 479 
that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." (369 U.S. at p. 516 [8 L.Ed.2d at p. 77].) Here the record shows that the accused was offered counsel and rejected the offer. Even defendant does not deny this — he merely does not recall. The remaining issue then becomes, was such rejection made intelligently and understandingly?
On this issue Carnley (id., pp. 516-517 [8 L.Ed.2d pp. 77, 78]) leaves Moore v. Michigan (1957) 355 U.S. 155 [2 L.Ed.2d 167, 78 S.Ct. 191] unscathed. [22] Moore directs that when a defendant has been offered and refused counsel, and subsequently seeks to collaterally attack a judgment upon the ground that he did not have the benefit of counsel, he has "the burden of showing, by a preponderance of the evidence, that he did not intelligently and understandingly waive his right to counsel." (355 U.S. at pp. 161-162 [2 L.Ed.2d at pp. 172, 173].)[14] The record here does not, as asserted by defendant, compel, as inMoore, the conclusion that defendant sustained this burden as a matter of law.
[21b] The colloquy reported in the minutes relieves this case of the taint found in In re Johnson (1965) 62 Cal.2d 325, 333-335 [42 Cal.Rptr. 228, 398 P.2d 420], where there was no express waiver of counsel, and it could only be implied from the plea itself. (Cf. also, In re James (1952) 38 Cal.2d 302, 313 [240 P.2d 596]; and People v. Chesser (1947) 29 Cal.2d 815, 821-825 [178 P.2d 761, 170 A.L.R. 246].) The trial court was not bound to accept defendant's conclusion "that because of the facts he did not intelligently waive his right to counsel." It was entitled to weigh the facts defendant stated concerning his age, schooling, intellectual capacity, knowledge of the charge and procedure, and his account of the proceedings, together with the facts contained in the minutes, in the judge's affidavit and in the probation report, which was made part of the record. (See,In re Chester (1959) 52 Cal.2d 87, 89-91 [338 P.2d 431]; In reConnor (1940) 16 Cal.2d 701, 707-708 [108 P.2d 10]; and Murray
v. Superior Court (1955) 44 Cal.2d 611, 613-620 [284 P.2d 1].)
No error is found in the trial court's rulings in regard to the 1951 conviction. *Page 480 
The "Dantesque abandonment of hope" attributed to the mandatory minimum sentence of the original judgment in this case (238 Cal.App. 2
d at p. 473) hovers over its successor. It is for the Legislature, however, not for the courts, to ameliorate burdens which many believe unwarranted. To increase the minimum sentence and time to be served prior to eligibility for parole from 5 to 15 years because of two marijuana cigarettes the defendant received from a friend over 15 years ago appears ridiculous. This absurdity, however, does not warrant a decision vacating a conviction legally obtained for a more recent offense, nor a declaration that the trial judge erred in resolving conflicting facts and inferences against the defendant with respect to the prior offense.
West does contribute something to the instant case. As inWest, "[C]ounsel for appellant [and for respondent too] in this case submitted briefs of the highest quality on difficult questions of law. We commend [each of them] for the excellence of his presentation." (237 Cal.App.2d at p. 808.)
The judgment is affirmed.
Molinari, P.J., and Elkington, J., concurred.
Appellant's petition for a hearing by the Supreme Court was denied October 5, 1967. Peters, J., was of the opinion that the petition should be granted.
[1] The defendant filed a petition for a writ of mandamus seeking a writ which would order the trial court to hear and determine his motion for a new trial, or in the alternative, order a new trial, and which would also order it to dismiss a prior conviction. This petition was denied by Division Two of this court, and a hearing in the Supreme Court was also denied. (1 Civ. 23610.)
[2] Penal Code, § 1191, provides in pertinent part: "In the superior court, after a plea, finding or verdict of guilty . . . the court must appoint a time for pronouncing judgment, which must be within 21 days after the verdict, finding or plea of guilty . . .; provided, however, that the court may extend the time not more than 10 days for the purpose of hearing or determining any motion for a new trial, or in arrest of judgment, . . ."
[3] No opinion is expressed on defendant's second postulate that the refusal of the court to entertain the motion for new trial, if deemed properly made under the circumstances of this case, would necessitate an automatic new trial under those provisions of Penal Code, section 1202 which state: ". . . If the court shall refuse to hear a defendant's motion for a new trial or when made shall neglect to determine such motion before pronouncing judgment or the making of an order granting probation, then the defendant shall be entitled to a new trial." It is suggested that in such event the refusal might be deemed a denial of the motion so that the merits of the motion would be first reviewed on appeal, or by the trial court on remand. (Cf.People v. Grake (1964) 227 Cal.App.2d 289, 293 [38 Cal.Rptr. 666]; People v. Jaramillo (1962) 208 Cal.App.2d 620, 627-628 [25 Cal.Rptr. 403]; and People v. Prudencio (1928)93 Cal.App. 241, 247 [269 P. 698].)
[4] Parenthetically it may be noted that there is no newly discovered evidence in this case. The transcript of the defendant's preliminary examination, which was made a part of the record on the first appeal (1 Crim. 4920), discloses that return had been made on the search warrant and that it was filed with the magistrate. After the record on the first appeal was filed with this court, the defendant himself requested the clerk of the trial court to furnish material concerning the search warrant. This request was forwarded to the clerk of this court, and, as reiterated in a request by defendant's court-appointed counsel, was denied because the search warrant and the affidavit upon which it was predicated were not part of the record before the trial court. (Cf. Cal. Rules of Court, rule 12, with rule 23(b).) The affidavits submitted in connection with the purported motion for new trial indicate that defendant's former attorney examined the warrant and affidavit in preparing for the trial.
[5] The question of change of law is discussed infra. It may be noted here that the case was tried September 28th and 29th, 1964. Although the decision in People v. West (1965) 237 Cal.App.2d 801
[47 Cal.Rptr. 341], to which defendant refers was not filed until November 1, 1965, Aguilar v. Texas (1964)378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509] upon which the alleged new rule depends, was promulgated on June 15, 1964, over three months before the trial.
[6] It appears that some thought was given to the matter both by defendant and his counsel (see fn. 3, supra). No explanation was offered to the appellate court to show why the affidavit and warrant had not been made part of the trial record and objected to there, or why they should be made a part of the record on appeal.
[7] This assumption proved unwarranted when the United States Supreme Court determined that Escobedo would only apply to the trials which began after the date it was decided. (Johnson v.New Jersey (1966) 384 U.S. 719, 726-735 [16 L.Ed.2d 882, 888-893, 86 S.Ct. 1772].) This state, however, with respect to the Escobedo-Dorado rules, adheres to the test of whether the judgment was final at the time of the Escobedo decision. (People v. Rollins (1967) 65 Cal.2d 681, 684-692 [56 Cal.Rptr. 293, 423 P.2d 221].)
[8] The affidavit reads: "He is a Detective of the Santa Clara County Sheriff's Office, that he is informed and believes that there is certain property, to wit: Narcotics, as defined by Calif. Health Safety Code Secs. 11001, 11002, 11002.1 and 11003.1 including Heroin, Marijuana and other narcotics and hypodermic needles, syringes, eye droppers, spoons and other equipment and paraphernalia used in the preparation, packaging and use of narcotics, located as follows: On the person of Charlie Pineda, and in his place of residence located at 141 South Chestnut Street, Gilroy, which premises consist of a house, garage and out-buildings thereto, and any automobiles under his control and in his possession. He is informed and believes that such property was used as a means of committing a felony, to wit, a violation of California Health Safety Code Secs. 11500 and 11530, Possession of narcotics. Following is the basis for affiant's beliefs stated herein: Affiant is a Detective with the Santa Clara County Sheriff's Office investigating illicit narcotics activity in Santa Clara County. Affiant has been informed by a reliable, confidential informant, whose life would be in danger were the name revealed, that within the past three weeks said Charlie Pineda has been in possession of and dealing in narcotics in the Gilroy area. Affiant has received information on at least six preceding occasions concerning narcotics from said informant, all of which proved to be reliable. Affiant knows said informant to be reliable. Affiant knows said Charlie Pineda to reside at the above address and to be in possession of the above automobile. Affiant knows from other officers and police records that said Charlie Pineda has a narcotics police record. Affiant believes narcotics will be located where first above described. Affiant desires to search at nighttime because, to his knowledge, most narcotics activity takes place during the nighttime."
[9] It may be noted that prior to July 11, 1966, it was generally held that when a search and seizure was made under a search warrant valid on its face, the defendant's remedy was to attack the warrant under sections 1539, 1540 of the Penal Code; and that failure to do so would preclude a subsequent claim that the evidence obtained was the result of an illegal search and seizure. (See People v. Butler (1966) 64 Cal.2d 842, 843-845 [52 Cal.Rptr. 4, 415 P.2d 819], and cases collected p. 844; and cf. Witkin, Cal. Evidence (2d ed. 1966) § 141(a), p. 135, withid. (1963 Supp. to 1st ed. 1958) § 36C, p. 33.) Some authority, however, indicated that the legal sufficiency of the affidavit itself could be considered without such prior attack. (People
v. Tillman (1965) 238 Cal.App.2d 134, 137 [47 Cal.Rptr. 614];People v. Govea (1965) 235 Cal.App.2d 285, 297 [45 Cal.Rptr. 253]; Dunn v. Municipal Court (1963) 220 Cal.App.2d 858, 867 [34 Cal.Rptr. 251]; People v. Perez (1961) 189 Cal.App.2d 526, 531-532 [11 Cal.Rptr. 456]; Arata v. SuperiorCourt (1957) 153 Cal.App.2d 767, 770 [315 P.2d 473].)
[10] In passing it may be noted that the trial judge observed: "While I suppose in the final analysis with any attorney no matter how well you try a case, if the case isn't won, you find little comfort in that thought. The case was indeed ably tried by you in a very, very difficult case, so much so that the jury stayed out a long period of time. And so this man has had every right that he could possbly expect and has been given every consideration."
[11] On direct examination at the trial, to forestall the inevitable impeaching questions, the following had ensued: "Q And Mr. Pineda, you have had prior convictions of felonies; have you not? A. I have. Q You are presently on parole; are you not? A I am. Q And what were your prior offenses, Mr. Pineda? I should say, prior felony offenses? A In 1951 I was convicted of possession of marijuana, and in 1959 I was convicted again of possession of heroin, and I was released. I was sentenced to the State Penitentiary and I was released in 1962. Q And you have been on parole ever since; have you? A Yes. I have been on parole for the past two years, two months before this incident happened."
[12] This affidavit reads:
"ERNEST VIVALLAVA PINEDA, being first duly sworn, deposes and says: That he is the defendant in the above-entitled cause and that in November of 1951 he appeared in the Superior Court of Santa Clara County and entered a plea of guilty to a charge of possession of marijuana and that at that time he was not represented by an attorney. At the time of said plea, affiant was 20 years of age and had attended school in Gilroy until the eighth grade, however, he did very poorly in school and his reading and writing ability was likewise very poor; subsequently in 1959, his reading and writing skills were tested and he was informed and therefore believes and avers that his reading and writing ability was equivalent to that of a fourth grade student, and he was thereafter enrolled in a third grade class to correct his deficient reading and writing skills. That at the time he entered his plea to the charge in 1951, affiant did not understand the elements of the charge against him nor did he know the available defenses to that charge. That at no time during the pendency of those proceedings in 1951, either in the municipal court or the superior court, did the affiant have the aid or assistance of counsel; that a preliminary examination was conducted against him on that charge in the San Jose Municipal Court and he was not represented by counsel; that he was unable to question intelligently the witnesses against him, nor was he able to assert any defenses that might have existed to that charge; nor does he recall being offered the aid of counsel either before or at the time of said preliminary examination. That at the time of his arrest on said charge in September of 1951, affiant was questioned by police officers over a period of four days while in custody, that they did not inform him of his right to an attorney or his right to silence; that during said interrogation the police continuously urged him to confess to the charge and told him that if he did confess they would release affiant's brother, John Pineda, and another man who were then being held in custody on the same charge; that they also told affiant that if he did not confess, they would take his brother's car and furniture from him; that they also told affiant that if he confessed and pled guilty to the charge, he would receive a county jail sentence which would run concurrently with the jail sentence he was then serving on a misdemeanor. That in response to said threats and promises the defendant signed a confession and subsequently entered a plea of guilty to the charge because he believed that said confession was binding upon him. That at the time of said plea, affiant did not know that the confession was inadmissible in evidence against him nor did he know that he had a defense to the charge insofar as he did not have actual knowledge that he possessed marijuana at the time of his arrest. Affiant does not recall whether he was offered the aid of an attorney when he appeared in the superior court on the above charge; however, if he did reject such an offer, affiant avers that because of the above facts he did not intelligently and understandingly waive his right to counsel.
[13] This affidavit reads in part: "I, William F. James, being first duly sworn do depose and say: That during the year 1951, and for many years both prior and subsequent thereto, I was the presiding judge of the Criminal Division of the Superior Court in and for the County of Santa Clara, State of California; that during the year 1951 I presided over the arraignments of defendant in felony cases, conducted the trial of a felony criminal cases, and passed sentence in felony matters [sic]. That the docket for the Superior Court Criminal Division indicates that on November 9, 1951 I presided over the arraignment of the defendant ERNEST VIVALLAVA PINEDA and that on November 16, 1951 I denied this defendant probation and sentenced him to three months in the County Jail to run concurrently with a sentence he was then serving in the County Jail on another matter. During the year 1951 and for many years prior and subsequent thereto, it was my custom and regular practice to arraign each defendant in a felony matter individually. It was my practice during arraignment to inquire of each defendant whether he had counsel, and if such defendant did not have counsel, to further inquire whether the defendant desired the court to appoint counsel for him. It was also my practice to inquire of the defendant whether he desired to have the information read to him, and if not, whether he understood the nature of the charges against him. At this late date I am unable to recall the specific case of the above-named defendant. At this late date I am unable to recall the details of the arraignment and sentence other than as such is indicated by the docket and my practice in such matters."
[14] This rule applies here where the defendant is not only attacking the prior conviction, but also his solemn admission that it was suffered. When the prior is denied or otherwise controverted when first offered against the defendant, the burden of proof is on the prosecution. (People v. Coffey (1967)67 Cal.2d 204 [60 Cal.Rptr. 457, 430 P.2d 15]; and see People v.Hildabrandt (1966) 244 Cal.App.2d 423, 428 [53 Cal.Rptr. 99].) *Page 481