Filed 6/28/22 P. v. Stankewitz CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. DOUGLAS RAY STANKEWITZ, Defendant and Appellant. | F079560 (Super. Ct. No. CF78227015) **OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County. Arlan L. Harrell, Judge.

Elizabeth Campbell, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Eric L. Christoffersen, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

Following a retrial, appellant Douglas Ray Stankewitz was convicted by jury of first degree murder (Pen.[1] Code, § 187), robbery (§ 211), and kidnapping (§ 207), all with the personal use of a firearm (§ 12022.5). In addition, the jury found true special circumstances alleging that the murder occurred during the commission of a robbery and a kidnapping (former § 190.2, subd. (c)(3)(i), (ii).) The jury returned a verdict of death.

In 1990, Stankewitz's guilt, the special circumstance findings, and the penalty verdict were affirmed following an automatic appeal to the California Supreme Court. (*People v. Stankewitz* (1990) 51 Cal.3d 72, 80.)

In 2009, the United States District Court for the Eastern District of California granted, in part, a petition for writ of habeas corpus filed by Stankewitz, reversing his death sentence for ineffective assistance of counsel at the penalty phase of his capital murder trial. (*Stankewitz v. Wong* (E.D. Cal. 2009) 659 F.Supp.2d 1103.)

In 2012, the Ninth Circuit Court of Appeals affirmed the District Court's grant of habeas relief reversing Stankewitz's death sentence. (*Stankewitz v. Wong* (9th Cir. 2012) 698 F.3d 1163, 1176.)

In 2019, the Fresno County District Attorney's Office filed a request to resentence Stankewitz to life without the possibility of parole, electing not to retry Stankewitz for the death penalty. The trial court vacated Stankewitz's death sentence and resentenced him to life without possibility of parole (LWOP) plus seven years.

On appeal, Stankewitz contends: (1) the trial court erred in finding that the federal court's order precluded it from exercising sentencing discretion at the resentencing hearing; (2) Stankewitz's right to counsel and due process were violated when the court refused to grant his requests for a continuance of the sentencing hearing; (3) the court erred in denying Stankewitz's motion for new trial. Stankewitz contends that remand for

---

[1] All undefined statutory citations are to the Penal Code unless otherwise indicated.

a resentencing hearing is required as a result of these errors. In a supplemental brief, Stankewitz further requests this court direct the lower court to order an updated probation officer's report for purposes of the resentencing hearing.

The Attorney General concedes the trial court erred by misunderstanding the scope of its discretion at the resentencing hearing, and that another sentencing hearing is therefore required. Because resentencing is required, the Attorney General further contends that Stankewitz's claim regarding the denial of his requests for a continuance is moot and his request for a supplemental probation officer's report is not yet ripe. Finally, the Attorney General asserts Stankewitz's motion for a new trial was properly denied.

We conclude the following: We agree with the parties that resentencing is required and will therefore remand this case back to the trial court. Stankewitz's claim that the trial court erred in refusing to grant his requests for a continuance of the sentencing hearing is therefore moot. Because Stankewitz will have the opportunity to request an updated probation officer's report on remand, we decline his request to order the lower court to produce an updated report. Finally, we conclude that Stankewitz's motion for a new trial was properly denied.

## STATEMENT OF FACTS

*The Underlying Offense*

The following statement of facts is derived from the California Supreme Court's opinion following Stankewitz's automatic appeal. (*People v. Stankewitz, supra,* 51 Cal.3d at pp. 81-84.).

On the evening of February 7, 1978, Stankewitz, then 19 years old, left Sacramento driving a white Oldsmobile. He was headed for Fresno. In his company were his mother and brother, an older man named J.C., and three young companions, Marlin Lewis, Tina Topping and 14-year-old Billy B.

The group reached Manteca about 1 a.m. on February 8, and stopped at a 7-Eleven store to buy oil for the car. Manteca police observed the car irregularly parked and ran a

3.

check on the license plate. Information was received indicating that the car had been stolen. Several officers then approached the car and frisked several of the occupants. One of the passengers who identified herself as "Tina Lewis" stated that the car had been borrowed from her uncle in Sacramento. Based on that information, the officers contacted Sacramento police, but were unable to determine whether the car had in fact been stolen. The officers asked the group to follow them to the police station. Another attempt was made to contact the vehicle's owner without success. After about an hour and a half, they were allowed to leave, but the vehicle was impounded. Before departing, the group obtained directions to the local bus depot.

The bus depot was not open when they arrived so they waited in a nearby donut shop. After several hours, Stankewitz, Tina Topping, Marlin Lewis, and Billy B. decided to hitchhike. Stankewitz's mother, brother and J.C. remained at the station. Stankewitz and his three companions succeeded in hitchhiking as far as Modesto. Unable to get a ride any farther, the four walked to a nearby Kmart, where Stankewitz announced that they were "going to look around for a car." Stankewitz and Tina Topping proceeded to look for a car—apparently to steal—in the parking lot; Billy eventually went inside the Kmart. When he exited, he saw Topping pointing toward a woman walking to her parked car. Stankewitz, Marlin Lewis and Topping followed the woman; as she opened her car door, Topping pushed her inside and entered the car herself. Marlin Lewis then jumped in the backseat and opened the passenger side door, admitting Stankewitz. Topping honked the car horn. Billy, in response, started to walk back toward the store; Topping shouted "come on" and Billy reversed field, ran to the car and got in the backseat with Marlin Lewis. In the meantime, Stankewitz had produced a pistol, and Marlin Lewis produced a knife.

They exited the Kmart parking lot, Tina Topping driving, the victim—Theresa Greybeal—seated on the console, and Stankewitz seated next to her in the passenger seat;

4.

Billy B. and Marlin Lewis were seated in the back. The group proceeded to the freeway and turned south toward Fresno.

Once on the freeway, Ms. Greybeal stated that none of this would have happened if she had her dog with her. Stankewitz responded by pulling out his gun and stating, "This would have took care of your dog." After several miles, Tina Topping asked Ms. Greybeal for money and Ms. Greybeal took $32 from her purse and handed it to Marlin Lewis. She also gave Topping her wristwatch, with the comment that she could put in an insurance claim for the loss.

When the group arrived in Fresno they drove directly to a bar called the "Joy and Joy." Tina Topping went into the bar and returned after a few minutes with a woman named Christina Menchaca. Menchaca joined the group, now totaling six, and they drove around the corner to the Olympic Hotel. Topping and Menchaca went into the hotel. A few minutes later they returned to get Stankewitz and all three then reentered the hotel. Several minutes later Stankewitz returned to retrieve the pistol from Marlin Lewis. Shortly thereafter, Stankewitz, Topping and Menchaca returned to the car. They appeared to be moving more slowly; their eyes were glassy.

Tina Topping then suggested they go to Calwa to "pick up," a slang expression meaning to obtain heroin. They drove to Calwa, stopping near a house with a white picket fence. Topping told everyone to get out, she did not want a lot of company when they went to "pick up." Several of the group exited the car, including Billy B., Marlin Lewis, Stankewitz, and the victim, Ms. Greybeal. Billy asked the victim for a cigarette; she gave him one and took one for herself. After two or three minutes, Topping told Billy to get back in the car. Billy reentered the car along with Marlin Lewis. From inside the car, Billy saw Stankewitz walk toward Ms. Greybeal, who was standing five or six feet away. Ms. Greybeal was facing away from the car. Stankewitz raised the gun in his left hand, braced it with his right hand, and shot her once in the head from a distance of about one foot. Ms. Greybeal fell to the ground, fatally wounded.

5.

Stankewitz returned to the car and said, "Did I drop her or did I drop her?" Marlin Lewis responded, "You dropped her." Both were giggling. As the car pulled away, Stankewitz cautioned Tina Topping to drive slowly so they would not get caught. Marlin Lewis observed that the victim's purse was not in the car and concluded, "we made a bad mistake."

After returning to Fresno, the group drove to the Seven Seas Bar and Christina Menchaca went inside to try to sell the victim's watch. Stankewitz asked her to try to get $60 for it. While Menchaca and Marlin Lewis were inside the bar, two police officers approached the car. Tina Topping told Billy B. to give a false name. He did so and after some brief questioning the officers left. Menchaca returned saying that she had not succeeded in selling the watch and Stankewitz suggested they move on and try to sell it in Clovis.

Stankewitz's efforts to sell the watch, however, were also unsuccessful. In Clovis, a girl informed Billy that his mother had filed a missing person's report on him. Billy asked to be driven home to Pinedale.

When he arrived home, Billy B. began to cry and told his mother what had happened. His mother called the police and an investigator came to the house and took a statement from Billy. Later that evening, Fresno police apprehended Stankewitz, Tina Topping and Marlin Lewis, still in possession of the victim's car.

The pistol that had been used to kill Ms. Greybeal was found in the car. Her watch was recovered from the jacket of Christina Menchaca, who was arrested nearby.

The foregoing account of the murder came primarily from Billy B. Other witnesses corroborated various portions of the testimony. Ms. Greybeal's father confirmed that she had left his residence on the evening of the murder to pick up some cigarettes at the Kmart; she was driving her father's car, the vehicle in which Stankewitz was later apprehended. He also testified that the victim owned two dogs. The officers who arrested Stankewitz were called as witnesses, as well the officers who found the

6.

victim's body and examined the crime scene. A ballistics expert confirmed that the victim had been shot from a distance of six to twelve inches; an expended shell case found in the vicinity of the body was determined to have been fired from the gun recovered from the victim's car. The victim's handbag and an unlit cigarette were also found near the body. The coroner who performed the autopsy confirmed that the victim had been killed by a single gunshot wound to the neck, severing the spinal cord and causing immediate paralysis and death.

Also introduced at the guilt phase were five yellow sheets of paper seized from Stankewitz's cell during a routine search for contraband. The handwriting on the papers was identified as Stankewitz's. The papers contained narrative scripts for Tina Topping, Marlin Lewis and Christina Menchaca indicating how the kidnapping, robbery and homicide had supposedly occurred. These fictional accounts blamed the killing on Lewis.

### *Stankewitz v. Wong* (E.D. Cal. 2009) 659 F.Supp.2d 1103

On September 21, 2009, the United States District Court for the Eastern District of California granted, in part, a petition for writ of habeas corpus filed by Stankewitz, reversing Stankewitz's death sentence for ineffective assistance of counsel at the penalty phase of his capital murder trial. The order stated the following, in relevant part: "A writ of habeas corpus shall issue directing the State of California to vacate and set aside the death sentence in *People v. Douglas Ray Stankewitz,* Fresno County Superior Court Case No. 227015-5, unless within 90 days of the entry of judgment of this order, the State of California initiates proceedings to retry Stankewitz's sentence. In the alternative, the State of California shall re-sentence Stankewitz to life without the possibility of parole."

### *Stankewitz v. Wong* (9th Cir. 2012) 698 F.3d 1163

On October 29, 2012, the Ninth Circuit Court of Appeals affirmed the District Court's grant of habeas relief. (*Stankewitz v. Wong, supra,* 698 F.3d at p. 1176.) The Ninth Circuit's opinion directed the State of California to either: "(a) vacate and set aside

the death sentence in *People v. Douglas Ray Stankewitz,* Fresno County Superior Court Case No. 227015-5, unless the State of California initiates proceedings to retry Stankewitz's sentence within 90 days; or (b) resentence Stankewitz to life without the possibility of parole." (*Stankewitz v. Wong*, *supra*, 698 F.3d at p. 1176.)

***Counsel's Requests for a Continuance and the Resentencing Hearing***

On April 19, 2019, the People filed a request to resentence Stankewitz to life without the possibility of parole, electing not to retry him for the death penalty.

On April 24, 2019, Stankewitz filed a request to continue the resentencing hearing, citing a conflicting medical appointment scheduled for one of the attorneys representing his case.

On April 26, 2019, the court denied the motion to continue based upon the procedural posture of the case, the presence of other counsel who would be appearing on Stankewitz's behalf at the hearing, and the untimeliness of the motion.

On April 30, 2019, Stankewitz filed a second motion to continue his sentencing hearing. In their motion, counsel stated it would urge the court to sentence Stankewitz to a life term, rather than LWOP, "pursuant to P.C. § 1118."

On May 1, 2019, the court denied the request, citing a lack of discretion to sentence Stankewitz to anything other than life without possibility of parole.

On May 3, 2019, at the sentencing hearing, counsel renewed his motion for a continuance. Counsel argued that another of Stankewitz's attorneys, "wanted to present the Court with an argument and points and authorities that would allow the Court to strike the special circumstances and impose a sentence of life with parole. And I do believe the Court has that authority under 1385 and 1118."

The court replied, "on the continuance issue, the Court is denying the continuance, as I had denied it twice previously." On the issue of sentencing, the court made the following comments:

8.

"Frankly, at this point, the Court doesn't see – given the position taken by the People and the directive from the Federal Court, again, this Court's jurisdiction is based upon that order from the Court. And the order was to impose a specific sentence in the case if the People did not pursue the death penalty .… Now that [the penalty retrial] is being removed, it doesn't appear to the Court that it has any ability – and to be completely frank, I'm not sure how I would perform – if I did have the ability, I can't say what I would do. I'm a rule follower, basically, and I was given very specific directions from the Federal Court in this particular instance."

Following further argument from Stankewitz's counsel, the court stated:

"Again, I'm afraid I tipped my hand a little bit, but it should be no surprise to anybody that when the Federal Court gives a directive to a State Court that the State Court is going to follow that directive. So the Court will proceed to sentencing. I have not heard anything concerning any other remedies that may be sought by Mr. Stankewitz, or on behalf of Mr. Stankewitz, that suggest that those remedies cannot be addressed post judgment."

Ultimately, the trial court concluded it was bound by the Federal Court's order:

"This Court has one option, and that is, to impose life without the possibility of parole. [¶] In order to accomplish the directive set by the Federal Court, the Court hereby vacates the death sentence imposed concerning Mr. Stankewitz pursuant to that Federal directive and will resentence Mr. Stankewitz concerning the first degree murder conviction with special circumstance to a term of life without the possibility of parole."

The court vacated Stankewitz's death sentence and resentenced him to LWOP plus seven years. The court imposed LWOP for count 1, the murder with special circumstances conviction; seven years total on the kidnapping conviction, consisting of the upper term of five years with a two-year gun use enhancement; and a concurrent term of four years on the robbery conviction.

## ANALYSIS

### I. Remand for Resentencing is Required

Stankewitz contends the trial court erred by assuming it lacked the discretion to strike the special circumstance findings and the section 12022.5 firearm enhancements

9.

pursuant to section 1385. The Attorney General agrees that the trial court erred and that remand for resentencing is required. We agree as well.

### A.     The Trial Court's Authority to Strike a Special Circumstance Finding

Our Supreme Court previously held that a special circumstance finding under California's death penalty statutes (§§ 190-190.5) could be dismissed under section 1385, modifying a sentence of life without the possibility of parole. (*People v. Williams* (1981) 30 Cal.3d 470, 490 (*Williams*).) Following *Williams*, section 1385.1 was added by Proposition 115 (the Crime Victims Justice Reform Act or the Act) and became effective on June 6, 1990. (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 298-299.) The statute provides: " 'Notwithstanding Section 1385 or any other provision of law, a judge shall not strike or dismiss any special circumstance which is admitted by a plea of guilty or nolo contendere or is found by a jury or court as provided in Sections 190.1 to 190.5, inclusive.' The language of the statute clearly and unmistakably prohibit[s]" a trial court from striking a special circumstance finding. (*People v. Johnwell* (2004) 121 Cal.App.4th 1267, 1283.)

However, section 1385.1's prohibition does not apply retrospectively to defendants whose crimes were committed prior to the enactment of the statute. As our Supreme Court has explained, Proposition 115's provisions "may only be applied to prosecutions of crimes committed on or after June 6, 1990." (*Tapia v. Superior Court, supra,* 53 Cal.3d at pp. 298-299.) To apply Proposition 115's provisions to crimes occurring before the Act's effective date "would change the legal consequences of the defendant's past conduct," and would also arguably "violate the rule against ex post facto legislation, since [Proposition 115's] provisions appears to define conduct as a crime, to increase punishment for a crime, or to eliminate a defense." (*Tapia v. Superior Court,* at p. 298; U.S. Const., art. I, § 10; Cal. Const., art. I, § 9.)

**B.       Analysis**

Here, it is undisputed that Stankewitz's crimes occurred in 1978, more than a decade before the enactment of section 1385.1.  Thus, as our Supreme Court made clear in *Tapia v. Superior Court*, the electorate's elimination of the trial court's authority to strike a special circumstance finding does not apply here.  (*Tapia v. Superior Court*, *supra*, 53 Cal.3d at pp. 298-299.)

The trial court's reluctance to deviate from the Ninth Circuit's disposition is understandable as it is generally in accord with the rules governing appellate procedure (see, part III.A).  However, we are persuaded that the Ninth Circuit's instructions can be reconciled with the lower court's authority to strike the special circumstance.  Section 190.2 sets forth only two possible punishments when a special circumstance finding is found true, death or life imprisonment without the possibility of parole.  (*People v. Mora* (1995) 39 Cal.App.4th 607, 614, citing § 190.2.)

Following *Williams*, the trial court's discretion to strike the special circumstance findings—based upon the law applicable at the time of Stankewitz's crimes—does not arguably arise until after a sentence of life without the possibility of parole is imposed.  Our Supreme Court has yet to resolve the question of whether a trial court has the power to dismiss a special circumstance finding after a jury has returned a verdict of death.  (See *People v. Cooper* (1991) 53 Cal.3d 771, 849 ["[w]e question whether a court has the power to dismiss a special circumstance after the jury has returned a verdict of death.  We expressly reserved the question in *Williams, supra*, 30 Cal.3d at page 490, footnote 11.  It is at least arguable that section 190.4 subdivision (e), provides the sole remedy after a death verdict"].)[2]

---

[2]       This court does not purport to address that question here.  Stankewitz's sentence of death was vacated and set aside.

At the time the Ninth Circuit had filed its opinion, the prosecutor had yet to elect whether to retry Stankewitz for the death penalty or to accept imposition of a sentence of life without the possibility of parole. Consequently, the lower court's authority to strike the special circumstance findings had yet to materialize or to become relevant. Moreover, nothing required the federal court to set forth every possible sentencing option available to the trial court under state law. Consistent with the parties' claims on appeal, the trial court was nonetheless authorized to strike the special circumstance findings once Stankewitz was sentenced to life without the possibility of parole.

At the resentencing hearing, the trial court imposed a sentence of life without the possibility of parole, stating that it lacked discretion to strike the special circumstance findings based upon the Ninth Circuit's instruction upon remand. The court commented: "Now that [the penalty retrial] is being removed, it doesn't appear to the Court that it has any ability – and to be completely frank, I'm not sure how I would perform – *if I did have the ability, I can't say what I would do*. I'm a rule follower, basically, and I was given very specific directions from the Federal Court in this particular instance." (Italics added.)

We agree with the parties' assertions that the trial court's comments support the conclusion that it failed to exercise its sentencing discretion. " 'A ruling otherwise within the trial court's power will nonetheless be set aside where it appears from the record that in issuing the ruling the court failed to exercise the discretion vested in it by law. [Citations.]' (*People v. Penoli* (1996) 46 Cal.App.4th 298, 302.) 'Failure to exercise a discretion conferred and compelled by law constitutes a denial of a fair hearing and a deprivation of fundamental procedural rights, and thus requires reversal. [Citations.]' (*Id.* at p. 306.)" (*People v. Downey* (2000) 82 Cal.App.4th 899, 912.)

We also agree that the record does not definitively support the conclusion that the court would have declined to exercise its discretion to strike the special circumstance findings, assuming the court had understood its authority to do so. (See *People v.*

12.

*Gamble* (2008) 164 Cal.App.4th 891, 901 [if " 'the record shows that the trial court would not have exercised its discretion even if it believed it could do so, then remand would be an idle act and is not required' "].) Thus, remand for a resentencing hearing is required.

Stankewitz further contends that the trial court has the discretion to strike the section 12022.5 firearm use enhancements following the passage of Senate Bill No. 620 (2017-2018 Reg. Sess.) (Senate Bill No. 620). Once again, the Attorney General agrees, as do we. Senate Bill No. 620 added subdivision (c) to section 12022.5, which provides: "The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section. *The authority provided by this subdivision applies to any resentencing that may occur pursuant to any other law*." (Italics added.)

At the resentencing hearing, the trial court is "entitled to consider the entire sentencing scheme." (*People v. Hill* (1986) 185 Cal.App.3d 831, 834.) "This rule is justified because an aggregate prison term is not a series of separate independent terms, but one term made up of interdependent components. The invalidity of one component infects the entire scheme." (*Ibid.*) We express no opinion as to how the trial court should exercise its discretion upon remand.

## II.      Stankewitz's Claim That the Court Erred in Denying His Requests for a Continuance of the Resentencing Hearing is Moot

Next, Stankewitz contends the trial court erred by denying his requests for a continuance for sentencing. In light of our conclusion that the instant case must be remanded back to the lower court for a resentencing hearing, we agree with the Attorney General's assertion that Stankewitz's claim is moot.

Stankewitz requests that this court direct the lower court to provide defense counsel with a "sufficient time to prepare for a meaningful sentencing hearing." He does not suggest what may constitute a sufficient amount of time to prepare for the sentencing

hearing. We decline Stankewitz's request. On remand, the parties will be better positioned to determine the precise amount of time required to prepare for Stankewitz's resentencing hearing, and may so advise the trial court.

## III. The Trial Court Lacked Jurisdiction to Consider the Motion for New Trial

Stankewitz contends the trial court erred in denying his motion for a new trial. We disagree. Because the lower court had no jurisdiction to entertain Stankewitz's motion, the motion for new trial was properly denied.

### A. Applicable Law

"It is well established that '[t]he order of the reviewing court is contained in its remittitur, which defines the scope of the jurisdiction of the court to which the matter is returned.' " (*People v. Ramirez* (2019) 35 Cal.App.5th 55, 64.) "In short, when an appellate court remands a matter with directions governing the proceedings on remand, ' "those directions are binding on the trial court and *must* be followed." ' " (*Ibid.*) The trial court "cannot modify, or add to, those directions." (*People v. Oppenheimer* (1965) 236 Cal.App.2d 863, 865-866; *Snukal v. Flightways Manufacturing, Inc.* (2000) 23 Cal.4th 754, 774, fn. 5 ["the terms of the remittitur define the trial court's jurisdiction to act"].) Consequently, when an appellate court remands a matter with directions to the trial court, those directions are binding, and any material variance from them is unauthorized and void. (*People v. Ramirez, supra,* 35 Cal.App.5th at p. 64.)

Section 1265 similarly provides that after the remittitur, "the appellate court has no further jurisdiction of the appeal or of the proceedings thereon, and all orders necessary to carry the judgment into effect shall be made by the court to which the certificate is remitted." (§ 1265, subd. (a), italics added.) "[T]he trial court is revested with jurisdiction of the case, *but only to carry out the judgment as ordered by the appellate court.*" (*People v. Dutra* (2006) 145 Cal.App.4th 1359, 1366.)

14.

**B.    Analysis**

Here, the trial court had jurisdiction to consider Stankewitz's sentence in its entirety, and any and all factors that would affect his sentence.  It did ***not*** however have jurisdiction to reopen issues regarding the adjudication of Stankewitz's guilt.  (§ 1263 ["If a judgment against the defendant is affirmed, the original judgment must be enforced].)  The trial court therefore correctly denied Stankewitz's motion for new trial as it fell outside the scope of the instructions upon remand.

*People v. Pineda* (1967) 253 Cal.App.2d 443 is instructive.  In *Pineda, the appellate court* explained that "the judgment in a criminal action is a record of the adjudication of guilt and the determination of the penalty." (*Id*. at p. 451.)  "[A]n appellate court has power and authority to open the penalty aspect of the judgment without affecting the finality of the adjudication of guilt. [Otherwise,] [t]o permit a new attack on the conviction in the trial court [would] grant the trial court the unwarranted power to rehear a decision of the appellate court." (*Ibid*.)

Following his retrial, Stankewitz's guilt was affirmed.  (*People v. Stankewitz, supra*, 51 Cal.3d 72 at p. 116.)  "The affirmance of the issue of guilt on the first appeal precludes subsequent review by the trial court on a motion for new trial." (*People v. Pineda, supra,* 253 Cal.App.2d at p. 453.)  The trial court therefore lacked jurisdiction to consider a motion for a new trial.

Stankewitz contends *People v. McKenzie* (2020) 9 Cal.5th 40 and *People v. Chavez* (2018) 4 Cal.5th 771 support the conclusion that his motion may be considered by the trial court.  Neither *McKenzie* nor *Chavez* are helpful here.  In *People v. Chavez*, our Supreme Court held that an order granting probation does not create a final judgment for purposes of a court's ability to exercise its dismissal power under section 1385. (*Chavez*, at p. 784.)  In *McKenzie*, our Supreme court held that an order granting probation does not give rise to a final judgment for purposes of the retroactivity rule announced in *In re Estrada* (1965) 63 Cal.2d 740. (*People v. McKenzie*, at pp. 46-47.)

15.

Neither case supports the conclusion that the adjudication of Stankewitz's guilt is somehow open to further attack. Indeed, to permit Stankewitz to take a second bite at the apple now would contravene clear legal authority that expressly prohibits such a possibility.

## IV.     Stankewitz's Request for an Order Requiring a Supplemental Probation Report

In supplemental briefing, Stankewitz requests this court order the lower court to compile a supplemental or updated probation officer's report. We agree with the Attorney General's contention that this issue is not yet ripe, and we therefore cannot "order" the lower court to so act. Instead, we urge the lower court to consider ordering a supplemental probation officer's report for the reasons discussed below.

California Rules of Court, rule 4.411(a) provides: "When required [-] As provided in subdivision (b), the court must refer the case to the probation officer for: [¶] (1) A presentence investigation and report if the defendant: [¶] (A) Is statutorily eligible for probation or a term of imprisonment in county jail under section 1170(h); or [¶] (B) Is not eligible for probation but a report is needed to assist the court with other sentencing issues, including the determination of the proper amount of restitution fine; [¶] (2) A supplemental report if a significant period of time has passed since the original report was prepared."

We acknowledge that Stankewitz is ineligible for probation (see § 1203, subd. (g)). However, an updated probation officer's report may assist the trial court in determining whether to exercise its discretion by striking the special circumstances findings or the gun use enhancements. The existing record lacks information pertaining to Stankewitz's postconviction conduct that may be relevant to the trial court's sentencing decisions. (See, *People v. Yanaga* (2020) 58 Cal.App.5th 619, 627 [statute allowing court to strike firearm enhancement allows court to consider postconviction behavior]; *Dix v. Superior Court* (1991) 53 Cal.3d 442, 460 ["it is well settled that when

16.

a case is remanded for resentencing after an appeal, the defendant is entitled to 'all the normal rights and procedures available at his original sentencing' [citations], including consideration of any pertinent circumstances which have arisen since the prior sentence was imposed"].)

Further, although rule 4.411(a)(2) of the California Rules of Court does not define what constitutes "a significant period of time" since the original report was prepared, Stankewitz was convicted and sentenced nearly 40 years ago. If this does not constitute a significant period of time, it is hard to imagine what would qualify.

We emphasize that our opinion is not intended to be construed as an order to the lower court. We simply note these considerations to assist the court in determining whether an updated report is necessary under the circumstances.

## DISPOSITION

The sentence is vacated and the case is remanded back to the lower court for resentencing. The judgment of conviction is otherwise affirmed.


                                                                    SMITH, J.
WE CONCUR:


FRANSON, Acting P. J.


PEÑA, J.


17.